[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 590 
The rule which excludes evidence of the confessions of persons charged with crimes, where such confessions have been made under the influence of threats or promises, has never been held to exclude evidence of any facts which were ascertained in consequence of such confessions. (Warrichshall's Case, 1 Leach, 264; Reg. v. Gould, 9 C. P., 364; 2 East. P.C., ch. 16, § 94; Com. v. Knapp, 9 Pick., 511; Gates v. The People,14 Ill., 433; State v. Vaigneur, 5 Rich., 391; State v.Motley, 7 id., 327; Deathridge v. State, 1 Sneed, 75;Jordan v. State, 3 George, 382.) The course pursued has usually been to admit proof of the words used by the prisoner with reference to the extraneous facts, and then to receive proof of the facts themselves. In Reg. v. Gould, Deathridge v.State, and Jordan v. State (supra), this course was pursued; but *Page 591 
in Com. v. Knapp (supra), which was a case of murder, evidence was received of the finding of a weapon in consequence of the confessions of the prisoner, the confessions themselves being excluded. This course does not appear to me to be objectionable unless the prisoner should choose to have so much of his statement as related to the facts discovered, given in evidence in connection with the facts, which he would undoubtedly be entitled to. No such request was made in this case, and I think the testimony given by officer Clark was properly received.
The exception to the charge presents a question of greater difficulty. The judge instructed the jury, that if they believed the witnesses for the prosecution, it would be their duty to render a verdict, either of robbery or of larceny from the person, or of grand or petit larceny and it would be for them to say which.
In the discussion of the exception to this charge, it was treated, and perhaps correctly, as presenting the question, whether jurors in criminal trials are the judges of the law as well as of the facts, and consequently whether it is proper for courts to give them peremptory instructions upon the legal questions arising on such trials.
In regard to this question, I entertain no doubt that it is as much the duty of jurors to be governed by the instructions of the court upon legal questions in criminal as it is in civil cases. The following are the principal reasons which lead to the conclusion that the power of juries should be and is thus restricted.
1. The selection of jurors from all classes of the people whose education and business cannot, as a general rule, have qualified them to decide legal questions, renders it unreasonable as well as apparently unsafe to require them to pass upon such questions.
2. If jurors were to determine the law, its stability would be subverted, and it would become "as variable as the prejudices, the inclinations and the passions of men." Every case would be governed, not by any known or established rule, but *Page 592 
by a rule made for the occasion. Jurors would become not only judges, but legislators as well.
3. All questions in regard to the admission or rejection of evidence, being questions of law, are required to be decided by the court. If jurors are to decide law and fact, their jurisdiction should extend to these questions, which often control the verdict.
4. Where the jury finds the facts of a case by special verdict, if they also find a conclusion of law, different from that which the law would derive from the same facts, the court disregards the conclusion, and gives judgment according to the facts found.
5. If the jury find a verdict in a civil case against law, the court sets it aside. That the same is not done in criminal cases, is owing, I think, more to the tenderness of the common law toward persons accused of crime, than to any recognized right of jurors to decide legal questions.
6. In all cases, civil and criminal, where only legal questions are raised, as, by demurrers to pleadings, demurrers to evidence, special verdicts, bills of exceptions, and motions in arrest of judgment, such questions are decided by the court and not by the jury.
7. The fact of guilt being ascertained and declared by the jury, the court determines the punishment, which the law prescribes for the offence.
The following authorities, will, I think, be found fully to sustain the conclusion to which I have arrived: 8 Barb., 610, 611; 1 Park., 152; 2 Sumn., 243; 2 Blackf., 156; Addison's Rep., 156; id., 255; App. to do, 53; Stark. Ev., part 3, § 51, p. 450; Worthington on Juries, 193; 4 Bl. Com., 391; 3 Term, 428; Cases Temp. Hardw., 28; Ernst v. H.R.R.R. Co., lately decided in this court.
The unquestionable power of juries to find general verdicts, involving both law and fact, furnishes the foundation for the opinion that they are judges of the law, as well as of the facts, and gives some plausibility to that opinion. They are not however, compelled to decide legal questions, having the right *Page 593 
to find special verdicts, giving the facts, and leaving the legal conclusions, which result from such facts, to the court. When they find general verdicts, I think it is their duty to be governed by the instructions of the court as to all legal questions involved in such verdicts. They have the power to do otherwise, but the exercise of such power cannot be regarded as rightful, although the law has provided no means, in criminal cases, of reviewing their decisions whether of law or fact, or of ascertaining the grounds upon which their verdicts are based.
The preceding position, however, does not dispose of the question presented by the exception. The further question remains, whether the instructions given were correct. Upon this question, I think the charge excepted to, although it may not, in this case, have been productive of injustice, is liable to very grave objections.
In every accusation of crime, there is involved the question of felonious or criminal intent, which is usually, if not in all cases, a question of fact peculiarly within the province of the jury to decide. A charge to the jury, that upon the facts testified to, assuming them to be true, it would be their duty to convict the prisoner, if ever proper, would be so only in the very rare cases in which the force of the facts proved should be such, as to make the inference of criminal intent, an inference of law, and not of fact. The testimony against Duffy, although very strong, did not present such a case. If the jury had found, in a special verdict, the facts testified to, as they appear in the bill of exceptions, the court could not, I think, on such a verdict, have adjudged the prisoner guilty of either robbery or larceny. It may fairly be inferred from the facts testified to that Duffy did not take the watch, but that it was taken by O'Brien. It is certainly not a legal conclusion from the facts that he did take it. On the verdict, therefore, he would have a right to assume, the fact not being found against him, that he did not take it. (Rex v. Francis, Strange, 1015; 2 Hawk. P.C. Ch., 47, § 9.) It is equally a matter of doubt whether he knew that O'Brien took it. That fact is not found, nor is it proved, otherwise than by circumstances, which, it *Page 594 
may be conceded, raise a very strong presumption that he knew it, but it is not a conclusive presumption; in otherwords, the law does not adjudge, upon those facts, that he knew it. Aside from the fact of the finding of the watch in consequence of his conversation with the officer, the probability would be nearly as strong that he did not, as that he did, know that the watch had been taken. His conduct, in remaining with Sullivan after the assault, going with him to the dance house, making no attempt at escape, or concealment, and his want of participation (so far as appears), in the fruits of the robbery, are circumstances which might be urged, with some force, in his favor. His assistance in finding the watch, is not absolutely irreconcilable with innocence. He might well say, in explanation of this fact, O'Brien told me he had pawned a watch in Walker street, or, I knew, he was in the habit of pawning goods there, and therefore advised the officer to inquire there for it. In my opinion the law does not pronounce such a position irreconcilable with the facts proved, although the jury might with propriety have drawn a different conclusion. (1 Comst., 524; 20 Pick., 173.)
The case would then rest, so far as Duffy was concerned, upon his joining O'Brien, in an unprovoked assault upon Sullivan, and the taking of the watch by O'Brien, without his knowledge, and without any participation on his part, either by act or intention, in the robbery. In such case, although O'Brien would be guilty of robbery, Duffy would be guilty only of the assault and battery, in which he participated. If the robbery had been the natural result of the assault, or committed in furtherance of the common design, both would have been responsible, although one only committed the particular act. If O'Brien had struck Sullivan a blow producing his death, both would have been guilty of murder, because such result, though not designed, might be regarded as a probable consequence of the assault. This principle of joint liability, however, does not apply when one of the parties departs entirely from the common object, and commits a separate crime having no relation to such object. (Rex v.Plummer, *Page 595 
Kelyng, 109; S.C., 12, Mod., 627; 2 Hawk. P.C. Ch., p. 29, § 9; Kelyng, 47; 1 Russ. on Cr., 2d ed., 24, note h.) It is no answer to this position to say that the evidence tends very strongly to show a joint design to commit the robbery as well as the assault; because that was a question, if not conclusively determined by the evidence, which it was the province of the jury to decide. I think the question of the guilt or innocence of the prisoner, admitting all the testimony to be true, was one which belonged to the jury to decide, and that the positive instruction, that it was their duty to find him guilty of robbery or larceny, was erroneous. It is not only the right of persons charged with crime to have submitted to the jury every question of fact involving their guilt or innocence, but the preservation of that system of administering justice, undoubtedly the wisest which has yet been devised, in which questions of law and questions of fact are separated from each other, and their determination committed to different bodies of men, requires not only that the jurors should not be allowed to usurp the duties which belong to the judges, but that judges should carefully abstain from encroaching upon the peculiar province of the jury. This consideration gives to the present case, not unimportant in itself, a consequence which it would not otherwise possess.
Another view of the charge would seem to demonstrate its fallacy. The jurors were instructed that, if they believed the witnesses, it was their duty to find the defendant guilty of one of four distinct offences, and it was for them to say which. This is equivalent to saying, that upon those facts the law determined that the prisoner was guilty of one of the four crimes, but did not determine that he was guilty of either one in particular. This could not be correct. If the law determined, on those facts, that the defendant was guilty of crime, it must also have determined of what crime he was guilty. The jury was left at liberty to say, as to either of the enumerated crimes, the defendant was not guilty, but not that he was guiltless of all. In my opinion, the judgment should be reversed and a new trial ordered. A majority of my associates, *Page 596 
however, are of opinion that the evidence of Duffy's participation in the robbery was sufficiently clear to justify the positive instructions which were given to the jury on that subject, and all agree that the other question was correctly decided. The judgment of the court below must therefore be affirmed.
MARVIN, J., concurred in this opinion throughout, and ROSEKRANS, J., was for reversal for the judge's failure to instruct the jury as to which of the offences stated the prisoner was guilty.