## Court of Appeals.

March 12, 1901.

## THE PEOPLE v. WILLIAM F. SHERLOCK

(166 N. Y. 180; 59 N. E. Rep. 830.)

1. LIBEL—CODE CRIM. PRO., §§ 527, 528—APPEAL.

In cases other than where the judgment is of death, the Court of Appeals can take notice only of legal errors appearing in the record

or raised by exception on the trial, and the fact that an alleged error, in a trial for criminal libel, involved a constitutional question does not increase the power of review.

2. SAME—JURY TO DETERMINE BOTH LAW AND FACT.

It is not an error in a trial of criminal libel for the judge to state his opinion of the law, if he instructs the jury that it is the judge alike of the law and the fact.

3. SAME—EVIDENCE.

In cases of criminal libel the question of the competency of evidence offered by either party must be decided by the court in the same manner as upon other trials.

4. SAME—PENAL CODE, § 244.

The pecuniary honesty of the foreman of a newspaper office is in no sense a public affair so as to allow the defendant to excuse an attack upon the character of such foreman, by testifying as to his belief as to the truth of the statements made, under the provisions of Penal Code, § 244.

APPEAL from a judgment of the appellate division of the supreme court, first department, affirming a judgment of the court of special sessions of the city of New York convicting the defendant of the crime of libel.

Benjamin Patterson and George W. Miller, for appellant.

Franklin Bartlett, for the People.

CULLEN, J.—The appellant was indicted for having published in a newspaper called the Unionist a false and malicious libel on Charles M. Clark, then in the employ of one of the large daily papers in the city of New York. At the time of the offense there was a " labor war " between the organized or " union " printers and the newspaper on which Clark worked. The material part of the alleged libel in substance charged Clark with having, when foreman of the Providence Journal, made false entries in the payroll of the paper, and appropriated the money represented by such entries. The Unionist was published as the representative or organ of the labor unions,

and copies of the paper were publicly exposed for sale through-
out the city of New York.   On the trial the appellant admitted
his responsibility for the libelous publication, and sought to
justify and excuse it.   He was convicted of the offense charged
against him, and that conviction has been affirmed by the ap-
pellate division of the supreme court.

The first ground on which it is sought to reverse the judg-
ment below is that the trial court, in its charge, invaded the
province of the jury which, under section 8, art. 1, of the
constitution, is, in criminal prosecutions or indictments for
libel, authorized to determine the law and the fact.   We are
of opinion that the question is not properly before us, because
no exception was taken on the trial to the charge of the court.
By section 527 of the Code of Criminal Procedure the appellate
division is authorized to grant a new trial in a criminal case
when satisfied that the verdict against the prisoner is against
the weight of evidence, against the law, or that justice requires
it, whether exceptions have been taken in the court below or
not.   But by section 528, which regulates appeals to this court,
the broad power given to the appellate division of the supreme
court is bestowed upon us only where the judgment is of death.
In other cases we can take notice only of legal errors appearing
in the record or raised by exception on the trial.   People v.
Driscoll, 107 N. Y. 414, 14 N. E. 305; Same v. Lyons, 110
N. Y. 618, 17 N. E. 391; Same v. Leonardi, 143 N. Y. 360,
38 N. E. 372.   The fact that the alleged error involves a con-
stitutional question does not increase our power of review,
which is limited by the constitution itself, and legislation en-
acted in pursuance of it.   The case is not analogous to that of
Cancemi v. People, 18 N. Y. 128.   There the record showed
on its face that the verdict was rendered by only 11 jurors.
It was held that such a number did not constitute a legal jury,
and therefore there was no jurisdiction to render the verdict.
In Messner v. People, 45 N. Y. 1, the record failed to show that
the prisoner was asked what he had to say why judgment
should not be pronounced against him.   It was held that the

defect was fatal, and that judgment could not be awarded until the defendant had been given an opportunity to move in arrest. In this case, however, the record shows jurisdiction in the court, and regularity in its proceedings. Erroneous rulings of the trial court on the admission of evidence or in instructions to the jury constitute legal error only when exceptions have been taken.

But, if we may look at the charge of the trial judge, we find no error therein. While the court stated its opinion of the law, the jury were several times distinctly instructed that under the constitution it was the judge alike of the law and the fact. It is not necessary to review the struggle that long prevailed between courts and juries as to their respective rights in prosecutions for libel. The history of the contest is common learning of the profession. The controversy was settled in this state by the enactment of chapter 90 of the Laws of 1805, which provided that the jury should have the right to determine the law and the fact " under the direction of the court, in like manner as in other criminal cases," and that the truth of the libel, when published with good motives and for justifiable ends, should be a justification of the charge. These provisions of the statute have been incorporated into the constitutions of 1821 and 1846, except that the right of the jury to determine both the law and the fact has been made unqualified. At the time of the enactment of the statute referred to and of the adoption of the constitution of 1821, the doctrine that in criminal cases the jury had the right as well as the power to determine both the law and the facts, if not universally accepted, prevailed to a very great extent. That seems to have been the view of Chancellor Kent. See People v. Croswell, 3 Johns. Cas. 337.. The law was finally settled otherwise in this state in Duffy v. People, 26 N. Y. 588, where it was held that in criminal cases (except prosecutions for libel), as well as in civil cases, the jury is bound to take the law from the court. The question was not authoritatively determined in the federal tribunals until the recent decision of the supreme court of the

United States in Sparf and Hansen v. U. S., 156 U. S. 51. In the opinions delivered in that case is to be found a most exhaustive review of the reported cases occurring early in the last century. An examination of the reports of those cases shows that even those judges who held most firmly the doctrine that the jury was the final judge of the law as well as of the facts never deemed it inconsistent with that doctrine to declare to the jury their own views of the law. The learned judge who wrote for the minority in the Sparf Case, holding that the old rule still prevailed, says : " To assist them [jurors] in the decision of the law, they receive the instructions of the judge; but they are not obliged to follow his instructions." The rule which we have been discussing still obtains in many of the states; in some by express constitutional enactment. Yet in these states, so far as our research goes, it is the practice of the trial judge to state his opinion of the law, at the same time instructing the jury that the final determination is with it. The charge of the learned trial court stated the law applicable to the case with entire correctness.

There is but one exception which it is necessary for us to notice. The appellant was permitted the greatest latitude in his attempt to substantiate the charge of dishonesty made against the prosecutor. No proof, however, was given which sustained the charge. The defendant became a witness on his own behalf, and testified fully to his motive and intent in publishing the libel. He was then asked if, at the time of its publication, he believed the truth of the article. The question was objected to, and excluded over the defendant's exception. It is claimed that this ruling was error, and that the defendant was entitled to the benefit of the excluded evidence. In discussing this question it is to be premised that the function of the court in ruling on the admission of evidence is in no way affected or limited by the consideration that the jury is to determine the law and the fact when the cause is finally submitted to it. The question of the competency of evidence offered by either party must be decided by the court in the same manner

as upon other trials. In the dissenting opinion in Sparf v. U. S., supra, it is said: "The question whether particular evidence shall be admitted or not is one to be decided before the evidence can be submitted to the jury at all, and must be, as it always is, decided by the court; and this is so whether the admissibility of the evidence depends, as it usually does, upon a question of law only, or depends largely or wholly upon a question of fact,—as, whether dying declarations were made under immediate apprehension of death, or whether a confession of the defendant was voluntary, or whether sufficient foundation has been laid for the introduction of secondary evidence, or for permitting a witness to testify as an expert." In Com. v. Knapp, 10 Pick. 477, it was held that: "Although the jury have the power, and it is their duty, to decide all points of law which was involved in the general question of the guilt or innocence of the prisoner, yet when questions of law arise in the arraignment of the prisoner, or in the progress of the trial, in relation to the admissibility of evidence, they must be decided by the court, and may not afterwards be reviewed by the jury." To the same effect, see Thibault v. Sessions, 101 Mich. 279, 59 N. W. 624. The belief of the defendant in the truth of the article was not admissible in justification of the libel. This was the rule at common law, and neither the statute of 1805 nor the constitutional provisions have changed it. In Com. v. Snelling, 15 Pick. 337, under a Massachusetts statute substantially similar to our own, the trial court ruled that the belief of the defendant that the facts were true was not admissible in evidence to rebut the presumption of malice. This instruction was held proper. The court said: "But how is this defense [justification] to be made? By proof of the truth of the matter charged as libelous; not his belief of the truth, not his information, nor the strength of the authority, upon which such belief was taken up. No question can arise as to the good motive or justifiable end until the truth is proved. * * * It is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill

will towards the individual; * * * but if, in pursuing that design, he willfully inflicts a wrong on others, which is not warranted by law, such act is malicious." Had the defendant given evidence tending to prove the truth of the libelous charge, a different question would be presented. To establish a justification in a criminal prosecution for libel, it is necessary not only to show the truth of the libel, but also that it was published " with good motives, and for justifiable ends." It is proper, therefore, that a defendant, after having given evidence as to the truth of the charge made by him, should be allowed to testify to his belief in the truth as bearing on the question of his motive, as the truth alone is not a defense. But, where no proof of the truth of the charge is given, the defendant's belief can operate only in mitigation of punishment, and not as a defense, except in the case of excusable libel.

By section 244 of the Penal Code, " the publication is excused when it is honestly made, in the belief of its truth and upon reasonable grounds for this belief, and consists of fair comments upon the conduct of a person in respect of public affairs, or upon a thing which the proprietor thereof offers or explains to the public." This provision seems to be entirely new, and I cannot find its history prior to the enactment of the Penal Code in 1881. It was not in the Code as it was reported by the codifiers in 1850. It does not deal with the cases of privileged communications, for they are covered by section 253; and it was always a good defense to a prosecution for libel that the communication was privileged. But whether a false charge is excusable or not under the Penal Code depends not only on the belief of the defendant, and the grounds for such belief, but also on the subject-matter of the publication. It must consist " of fair comments upon the conduct of a .person in respect of public affairs, or upon a thing which the proprietor thereof offer or explains to the public." The pecuniary honesty of Clark as foreman of a newspaper office was in no sense a public affair. It is not necessary for us to now

enumerater the cases which would fall within this provision. It is sufficient to say. that the one before us does not. The constitution enacts that the truth of a publication, when made with good motives, and for justifiable ends, shall be a defense. The legisative enactment goes a step further, and provides that, even if the pubication is not true, if made in belief of its truth, and upon reasonable grounds for that belief, it shall also be a defense. But not in all cases; only in cases of the conduct of public affairs, or of things offered to or explained to the public. As this publication did not consist of such comments, belief in its truth did not tend to excuse the defendant.

Nor was the evidence admissible on the question of good faith in the publication of a privileged communication. Such a communication is privileged only when it is confined to those having an interest in the information ('Sunderlin v. Bradstreet, 46 N. Y. 188); also, if made voluntarily, it must be made by one interested in or entitled to make it. The charge was not made to Clark's employer, but in the defendant's paper, which was for sale and circulation among the public generally. As already said, the public had no interest within the meaning of the section of the Code in the subject of Clark's acts while a foreman of the Providence newspaper. In no view of the case and the evidence was the excluded testimony competent. The judgment appealed from should be affirmed.

PARKER, CH. J., and GRAY, BARTLETT, MARTIN, VANN, and WERNER, JJ., concur.

Judgment of conviction affirmed.

---

## NOTE ON CRIMINAL LIBEL.

WHAT IS LIBELOUS.—Charging a maltster with using filthy water in brewing. White v. Delavan, 17 Wend. 49. Charge of smuggling. Stilwell v. Barter, 19 Wend. 487. Swindling. Williams v. Godkin, 5 Daly, 499. Charging a woman with being an illegitimate child. Shelby v. Sun P