## COURT OF APPEALS,

March 2, 1909.

## THE PEOPLE v. CHARLES E. SHATTUCK.

(194 N. Y. 424.)

(1). APPEAL—COURT OF APPEALS CANNOT REVIEW JUDGMENT, EXCEPT OF DEATH.

In a criminal case, except where the judgment is of death, the Court of Appeals is limited to the review of questions of law and can take notice only of legal errors appearing in the record or raised by exceptions on the trial.

(2). SAME—APPEAL DISMISSED APPLICATION TO BE MADE TO APPELLATE DIVISION.

A defendant charged with the crime of grand larceny was erroneously convicted of stealing a check which was his own property. No motion for acquittal was made and no exception taken which raises the question whether a crime was committed until after the verdict was rendered, when a motion for a new trial was made. *Held,* that the Court of Appeals has no power to review the order affirming the judgment, but that it may dismiss the appeal, leaving the judgment in full force, thereby reinvesting the Appellate Division with jurisdiction, should application be made to it for reargument.

*People v. Shattuck,* 126 App. Div. 924. Appeal dismissed.

APPEAL from an order of the Appellate Division of the Supreme Court in the Fourth Judicial Department, entered May 27, 1908, which affirmed a judgment of the Monroe County Court rendered upon a verdict convicting the defendant of the crime of grand larceny in the second degree.

The facts, so far as material, are stated in the opinion.

*C. G. Baldwin,* for appellant. The check of $200, the subject of this prosecution, was the property of the defendant, Shattuck, and was not, therefore, a subject of larceny. Penal Code, § 528; *People v. Thomas,* 83 App. Div. 226; *People v. Hart,* 114 App. Div. 9; *People v. Gluck,* 188 N. Y. 167. The conviction of the defendant cannot stand if it is apparent from

all the evidence in the case that there was no intent on his part to obtain money or property from the complainant and wrongfully and unlawfully appropriate the same to his own use. *People v. Tompkins,* 186 N. Y. 413; *People v. Burnham,* 119 App. Div. 302; *People v. Moss,* 187 N. Y. 410; *People v. Gluck,* 188 N. Y. 167; *Wilson v. People,* 39 N. Y. 459; *People v. Miller,* 169 N. Y. 339; *People v. Blanchard,* 90 N. Y. 314.

*Howard H. Widener, District Attorney (Charles B. Bechtold,* of counsel), for respondent. The check for $200, the subject of the larceny, was the property of Dunbar and therefore it was larceny on the part of Shattuck to steal it. *People v. Miller,* 169 N. Y. 339; *People v. Call,* 1 Den. 120; *People v. McDonald,* 43 N. Y. 61; *Hildebrand v. People,* 1 Hun, 19. The actions of the defendant in retaining both checks clearly showed that it was done with a criminal intent, and the question of intent on his part was properly left with the jury. *People v. Call,* 1 Den. 120; *Ellis v. People,* 21 How. Pr. 359; *People v. Hall,* 6 Park. Cr. 642; *People v. McGarren,* 17 Wend. 460; *Wolfstein v. People,* 6 Hun, 121; *People v. Phelps,* 72 N. Y. 334; Penal Code, § 545; *People v. Moore,* 37 Hun, 94; *People v. Civille,* 44 Hun, 497.

HAIGHT, J.:

The defendant has been convicted of the crime of grand larceny, second degree, for the stealing of a check for $200, dated April 16th, 1906, drawn by C. W. Dunbar to the order of the defendant upon the Arcadian National Bank of Newark, N. Y. It appears that the defendant, a real estate agent, had found a purchaser for Dunbar's hotel at Newark, and the question arose between them as to the amount of commissions the defendant was entitled to. He claimed $250. Dunbar finally offered him $200. This amount was at last agreed upon, and Dunbar drew the check in question and delivered the same to the de-

fendant, who thereupon drew and delivered to Dunbar a receipt, dated on that day, for $200, which recited that it was "in full for sale of Newark hotel." This finally closed that transaction. The check became the property of the defendant and he had the right to present it to the bank and receive the money thereon.

Dunbar testified that after the defendant had handed him the receipt the defendant said he would play Dunbar a game of poker to see who should buy the supper for the four present. "I said ' all right,' and beat him out for the suppers and we stood there talking and he said ' have you got any ready money?' I said 'I guess so,' and he said 'Gee, I have got beat for the suppers and haven't any money and I want to borrow some' and I gave him $20.00 and he said 'I will draw up another check for $180, and destroy this $200 check.' And he picked up something and tore it up and threw it in the waste basket, so the other check was given for $180." This took place at the defendant's office. Dunbar in his testimony also stated that they had played a game of poker for the purpose of determining whether the settlement should be for $250 or $200 and that he beat the defendant on that game and that thereupon the $200 check was drawn and delivered. This, however, is immaterial, for the reason that it appears distinctly from the testimony of both the defendant and Dunbar that the settlement was complete upon the delivery of the check and the return of the receipt therefor. Dunbar, upon his cross-examination, stated that all the card playing was done before the checks were signed, that is, the playing for the $50, the difference between the amount of commissions claimed by the defendant and that offered by Dunbar and for the suppers, but on his redirect he again states that after the $200 check had been delivered they *then* played for the suppers. The defendant testified, in substance, that there was no playing of cards for the purpose of determining the amount of commissions that

he should receive, but that was settled at a meeting between them between three and four o'clock in the afternoon, at which an offer was made by Dunbar which he finally accepted and that the check was then drawn and delivered and receipted for by him; that, thereafter, Dunbar went away and was gone until after five o'clock, when he returned to the office with a pack of cards and that then they played a game for the purpose of determining who should buy the suppers. The defendant, in his testimony, also claimed that the $20 loan and the $180 check that was subsequently given were a loan of $200 which he procured from Dunbar pending the time that he should be able to reinvest his money in the purchase of other property.

Considering only the People's evidence we think there was an utter failure on the part of the district attorney to show that any larceny of the $200 check had been committed. Confessedly, it was properly given in the settlement of a claim owing by Dunbar to the defendant. It was his property and he had a perfect right to forward it to the bank upon which it was drawn and to receive payment therefor. It is said that he had pretended to tear up the check and thus induced Dunbar to give another check for $180, which in connection with the $20 loan would make the amount of the first check. Suppose he did, the fact still existed that he did not tear it up and he did not return it to Dunbar. It may be that, if he pretended to tear it up and thus induced Dunbar by that false representation to give him another check for $180, that the procuring of that check would be larceny, but that question is not now before us. The larceny charged, and that of which he has been convicted, is of stealing the former check of $200 which was his own property.

Notwithstanding our conclusion that there was no larceny of the $200 check, we have searched the record in vain to find any request made to the court to advise an acquittal, or any exception to any ruling or charge which raises the question,

until after the trial had been concluded and a verdict rendered, and then for the first time the defendant's counsel, in a motion for a new trial, enumerated as one of the grounds for such new trial that there was no crime committed under the evidence in the case. This motion, however, was not a part of the trial, but was one of the proceedings authorized for a reviewal of the trial and the results reached thereon. The question, therefore, arises as to whether this court has the power to review and reverse the conviction in this case. Section 527 of the Code of Criminal Procedure pertains to the powers of the Appellate Division of the Supreme Court and gives to that court the power to order a new trial " if it be satisfied that the verdict against the prisoner was against the weight of evidence or against the law, or that *justice requires a new trial, whether any exception shall have been taken or not, in the court below."* Section 528 has reference to appeals to the Court of Appeals, and when the judgment is of death this court is given the same discretionary power with reference to the granting of new trials as is given to the Appellate Division in other cases. This section must be read in connection with the provision of the Constitution, which is as follows: " The jurisdiction of the Court of Appeals, except where the judgment is of death, shall be limited to the review of questions of law." Art. 6, section 9.

In the case of *People v. Sherlock,* 166 N. Y. 180, 183, 15 N. Y. Crim. 413, CULLEN, J., in speaking of the powers of our court in such cases, says: " We are of opinion that the question is not properly before us, because no exception was taken on the trial to the charge of the court. By section 527 of the Code of Criminal Procedure the Appellate Division is authorized to grant a new trial in a criminal case when satisfied that the verdict against the prisoner is against the weight of evidence, against the law, or that justice requires it, whether exceptions have been taken in the court below or not. But by section

528, which regulates appeals to this court, the broad power given to the Appellate Division of the Supreme Court is bestowed upon us only where the judgment is of death. In other cases we can take notice only of legal errors appearing in the record or raised by exception on the trial."

Ordinarily, we should affirm where the record presents no exception for review, but an affirmance would be final and deprive the Supreme Court of any further power to review the judgment; the result, therefore, would be that the sentence of imprisonment would have to be executed on the defendant for a crime which he did not commit. We have concluded, therefore, to dismiss the appeal upon the ground that no exception is presented raising the question referred to, which we have the power to review. The dismissal of the appeal will thus leave the judgment of the Appellate Division in force and reinvest that court with jurisdiction, should further application be made to it for a reargument.

The appeal should be dismissed.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur; WERNER, J., concurs in result.

Appeal dismissed.