THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* YUI KUI CHU, Appellant.

Submitted January 7, 1937; decided March 9, 1937.

*Abraham Wilson* for appellant. The trial court took from the jury the question of malice. The various rulings and statements made by the trial judge during the course of the trial and in his charge invaded the jury's province. Failure to leave the question of malice for the jury constituted reversible error. (*People* v. *Croswell,* 3 Johns. Cas. 337; *Parmiter* v. *Coupland,* 6 M. & W. 105; *State* v. *Brock,* 39 S. E. Rep. 359; *Hunt* v. *Bennett,* 19 N. Y. 173; *People ex rel. Carvalho* v. *Warden,* 144 App. Div. 24; 212 N. Y. 612; *People* v. *Hebberd,* 96 Misc. Rep. 617.) The trial judge adopted the translation proffered by the People as the correct interpretation of the article complained of, thus resolving the issue of fact which was for the jury. (*People* v. *Ohanian,* 245 N. Y. 227; *People* v. *McDonald,* 159 N. Y. 309; *People* v. *Johnston,* 228 N. Y. 332; *Newman* v. *People,* 63 Barb. 630; *People* v. *Biddison,* 136 App. Div. 525; 199 N. Y. 584.) The trial judge assumed and, for all practical purposes of the trial, ruled that the alleged libelous publication charged the membership corporation referred to with the commission of a crime. The court unduly delimited and circumscribed the admission of evidence tending to show that the matter charged as libelous was true and was published with good motives and for justifiable ends. (*People* v. *Sherlock,* 166 N. Y. 180; *People* v. *Hebberd,* 96 Misc. Rep. 617; *Osota* v. *Long Island R. R. Co.,* 246 N. Y. 388; *People* v. *Cornell,* 126 App. Div. 151.)

*William Copeland Dodge,* District Attorney (*Erwin N. Schapira* of counsel), for respondent. The publication was libelous *per se.* (*Klinck* v. *Colby,* 46 N. Y. 427; *Slayton* v. *Hemken,* 91 Hun, 582; *Maybee* v. *Fisk,* 42 Barb. 326;

*Coleman* v. *Playsted*, 36 Barb. 26; *Alderson* v. *Kahle*, 73 W. Va. 690; *Turton* v. *N. Y. Rec. Co.*, 144 N. Y. 144; *Bergmann* v. *Jones*, 94 N. Y. 51; *Brooks* v. *Harison*, 91 N. Y. 83; *Rose* v. *Imperial Engine Co.*, 110 App. Div. 437; *Van Ingen* v. *Star Co.*, 1 App. Div. 429; *People* v. *Sherlock*, 166 N. Y. 180; *Roberson* v. *Rochester F. B. Co.*, 171 N. Y. 538; *People* v. *Stark*, 59 Hun, 51; 136 N. Y. 538; *Comm.* v. *Snelling*, 32 Mass. 321; *State* v. *Talbot*, 196 Mich. 520; *State* v. *Cooper*, 138 Iowa, 516; *State* v. *Sheridan*, 14 Ida. 222.) The publication was not justified. (*People* v. *Eastman*, 188 N. Y. 478; *People* v. *Stokes*, 30 Abb. N. C. 200; *People* v. *Sherlock*, 166 N. Y. 180; *Commonwealth* v. *Snelling*, 32 Mass. 337; *People* v. *Talbot*, 196 Mich. 520; *Bingham* v. *Gaynor*, 203 N. Y. 27; *Skinner* v. *Powers*, 1 Wend. 451; *Stilwell* v. *Barter*, 19 Wend. 487; *Cooper* v. *Barber*, 24 Wend. 105.) The publication was not excused. (*People* v. *Sherlock*, 166 N. Y. 180; *People* v. *Hebberd*, 96 Misc. Rep. 617; *Hamilton* v. *Eno*, 81 N. Y. 116; *Mattice* v. *Wilcox*, 147 N. Y. 624; *Bingham* v. *Gaynor*, 203 N. Y. 27; *Cortright* v. *Anderson*, 208 App. Div. 1; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144.) As this is an appeal from a judgment of the Appellate Division, affirming a judgment of conviction, the Court of Appeals cannot review the weight or sufficiency of the evidence, or substitute its judgment upon the facts for that of the jurors. (*People* v. *Rosenzweig*, 265 N. Y. 323; *People* v. *Pesky*, 254 N. Y. 373; *People* v. *Malkin*, 250 N. Y. 185; *People* v. *McCarthy*, 250 N. Y. 358; *People* v. *Sugarman*, 248 N. Y. 255.)

RIPPEY, J. The defendant was the editor and publisher of a newspaper, printed in the Chinese language and known as the *Chinese Journal*, with an average daily circulation within the city of New York and elsewhere of 6,500 copies. He was indicted in New York county and tried and convicted in the Court of General Sessions of the crime of publishing a libel in his paper on August 11, 1933, concerning the Chinese Charitable and Benevolent Associa-

tion of the City of New York, a Chinese membership corporation organized and operating under the laws of New York State, and its secretary, one Chin See Tong. The name of the corporation, in the Chinese language, was Chung Wah Kung Saw.

The respondent alleged that the article, both literally and in effect and by innuendo, falsely stated that the officers of the corporation were parasites and that it and its officers were the instruments of a group of degenerates whose purpose was, under the guise of lawful authority, to oppress and to rob and swindle the Chinese people in this country of their wealth. It was further alleged that the publication of the article was grounded in malice and that its publication tended to and did injure the corporation in the pursuit of its lawful business or occupation. If the article contained the statements claimed, if its publication was malicious and tended to injure the corporation in its business or occupation, its publication constituted a criminal libel within the definition contained in section 1340 of the Penal Law. Having such a tendency and effect, the publication was deemed to be malicious unless justification or excuse were shown therefor. (Penal Law, § 1342.) If the matter charged to be libelous was true and was published with good motives and for justifiable ends, its publication was justified. If the statements or innuendo in the publication were false, if honestly made in the belief of their truth and upon reasonable grounds for this belief and if it consisted of fair comment upon the conduct of the corporation in respect of public affairs, the publication was excused. (*People* v. *Sherlock*, 166 N. Y. 180.)

The Chinese Charitable and Benevolent Association of the City of New York was organized in 1890. The purposes for which it was formed, as stated in its certificate of incorporation, were " to ameliorate the condition of the Chinese poor in and about the City of New York; to care for and help sick and destitute Chinamen in and about the City of New York; to give advice and pecuniary

assistance as required to reputable and deserving Chinamen in and about the City of New York; and generally to aid and succor all worthy Chinese who may be found to be in need of assistance." But its activities were extended to unifying the Chinese in this country, to the arbitration of problems affecting the Chinese, and to general charitable and public welfare duties. It had an English secretary whose duties were to take care of English correspondence, to negotiate with and to contact American people, to serve as interpreter, to investigate Chinese laundries, Chinese restaurants, and the location of stores, and to take charge of all kinds of cases. Under its by-laws, membership fees were imposed, but it collected other fees for special services of variable amounts according to the character of such services rendered or promised and ability to pay. In August, 1933, the association had over ten thousand members in Greater New York and had branches in other States. It was asserted that it protected its members from competition, the fee for " protection " varying according to circumstances. Defendant attempted to show that such " protection " was neither possible, necessary, nor forthcoming, although large fees were demanded and exacted therefor, that ignorant and poor Chinese were oppressed by exactions which, he claimed, were imposed upon them, and that exposure by publication of the truth would awaken the Chinese to the fact that the exactions were neither necessary nor proper nor legal.

The article in question was printed in Chinese characters and so set out in the indictment. There was also inserted in the indictment a translation of the article into the English language, which the prosecution asserted was correct and charged the corporation with criminal activities. The court interpreter was called upon to make one of the translations, which he gave from the witness stand without previously reading or previous examination of the alleged libelous article. Defendant's counsel sought to cross-examine him at once as to its correctness, but

the court refused to permit such a cross-examination until after the interpreter had prepared himself, to which ruling an exception was duly noted. The court instructed the witness to examine the translation set up in the indictment, to compare it with his own translation, and limited the cross-examination to "whether or not his translation is in substance and to the point of what is stated in the indictment, even though the exact phraseology differs somewhat." The court recessed and the following morning defendant's counsel attempted to cross-examine the witness. The court adhered to the ruling as to the scope of such an examination, took the witness in hand, and the following appears in the record:

"By the Court:

"Q. I asked you yesterday to compare your translation as rendered to the jury with the translation as it appears in the indictment. I assume that that copy was given to you. Did you have it? A. Yes, I did.

"Q. You examined them both? A. I did.

"Q. Did your inspection of the translation of the one appearing in the indictment in any way cause you to change your own translation? A. No.

"Q. Did you notice any difference in substance between your translation and the translation as it appeared in the indictment from the Chinese language standpoint?

"A. I did not find any —

"Mr. Tompkins: Just a moment.

"A. — difference.

"Mr. Tompkins: Just a minute. * * * May I object to the question, if your Honor please?

"The Court: Objection overruled.

"Mr. Tompkins: Exception.

"A. I did not find any difference in the substance of my translation and the translation of Mr. Young. * * *

"Q. Well, then, as I understand you, your written translation would approach more nearly the written translation appearing in the indictment than was your spoken word? A. That is right.

"Mr. Tompkins: May I have an exception to that last question and answer?

"The Court: All right."

Defendant offered evidence on his own account as to the proper translation of the article. His English version was radically different from that of the prosecution. If adopted by the jury, it might have relieved the defendant of any responsibility criminally for its publication. Yung, who formulated the English translation which was set up in the indictment, was not called to the witness stand prior to the motion to dismiss at the close of the People's case. He was called on rebuttal and testified that the translation contained in the indictment was correct. Thus, the court considered the sole question to be as to whether the translation set up in the indictment was correct, and limited the proof to that question; if it was correct, the court concluded that the People had established their case, for, the court said, the publication as thus translated was libelous *per se*, inasmuch as it charged the corporation with the commission of a crime. By no such limited proof could the question be determined whether the publication was malicious and had the effect and meaning required by section 1340 of the Penal Law to constitute a libel. It did not depend upon the linguistic gymnastics of professional translators as to shades of meanings of particular characters or upon any personal construction they might put on such characters or what they said it meant in English. Whether the publication was libelous depended upon the purport and meaning of the Chinese language used according to the common understanding of the Chinese to whom it was addressed and by whom it could be read and understood. (*Hossbach* v. *Behr*, 139 App. Div. 793; *Wachter* v. *Quenzer*, 29 N. Y. 547.) At the close of the People's case, defendant moved to dismiss the indictment on the ground, among others, that there was no evidence upon which the jury could find the publication constituted a libel within the

meaning of section 1340 of the Penal Law. The motion was denied. The motion was renewed at the close of the whole case and again denied. An exception was noted in each instance. The court charged the jury, in substance and effect, that, if they adopted the English translation contained in the indictment, the publication was libelous *per se*, and, in the absence of justification or excuse, a verdict of guilty must be found. This charge was erroneous. (*Dolloway* v. *Turrill*, 26 Wend. 383.) By the Constitution, the jury are made the sole judges of the law and the facts. (N. Y. Const. art. 1, § 8.) An exception to the charge was duly noted.

The court excluded all evidence offered by the defendant by which he sought to establish that the matter charged as libelous was true and that the publication was with good motives and for justifiable ends, on the ground that, inasmuch as the publication according to its English translation contained in the indictment charged the corporation with the commission of a crime, the only evidence admissible was proof by defendant of the commission by the corporation of a crime which would justify the revocation of its charter. It was not necessary that the article published should charge the association with the commission of a crime to authorize an indictment and prosecution and conviction within the definition set out in the statute. If we adopt any of the translations as a guide, the charge was general, not specific. The publication must be read as a whole, and justification was required to be as broad as the charge. (*Stilwell* v. *Barter*, 19 Wend. 487, 489; *Fero* v. *Ruscoe*, 4 N. Y. 162; *Lanpher* v. *Clark*, 149 N. Y. 472.) The defendant was not limited to proof that the corporation had committed a specific crime to enable him to justify. Whether the publication charged the corporation with the commission of a crime or not, it might have been established, if possible, by competent evidence that the matter charged as libelous was true and was published with good motives and for justifiable ends. (*Dolloway* v. *Turrill, supra;*

*People* v. *Sherlock, supra.*)  Had it so appeared to the jury, the acquittal of defendant was mandatory.  (N. Y. Const. art. 1, § 8.)  The exclusion by the court of evidence tending to show justification was clearly erroneous (*People* v. *Cornell*, 126 App. Div. 151), and the exception was well taken.

Appellant urges that he has not had a fair trial and that the verdict is contrary to the evidence in the case.  Those questions are not open for our consideration.  (*People* v. *Huson*, 187 N. Y. 97; *People* v. *McCarthy*, 250 N. Y. 358, 364.)  Other questions of law, both upon the rulings of the court upon the admission or exclusion of evidence and upon the charge, duly preserved by exceptions, have been presented.  We do not deem it necessary to consider them, in view of the conclusions reached as indicated above.

The judgments should be reversed and a new trial ordered.

CRANE, Ch. J., O'BRIEN, HUBBS and LOUGHRAN, JJ., concur; LEHMAN and FINCH, JJ., taking no part.

Judgments reversed, etc.