THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BERNARD MAGER and HARRY MOLDEN, Appellants.

Second Department, May 9, 1966.

*Osmond K. Fraenkel* for appellants.

*Morton B. Silberman, District Attorney (Robert J. Stolarik* and *Orville H. Mann, Jr.,* of counsel), for respondent.

UGHETTA, Acting P. J.   The complainant was a member of the Rockland County Planning Board at the time some of the alleged libels were published and a member of the Rockland County Sewer Commission at the time other alleged libels were published.   It is conceded that none of the libels concerned his actions as such official; all were made solely with respect to his private conduct.   Thus, even if we assume that the complainant was a " public official " within the meaning of *New York Times Co. v. Sullivan* (376 U. S. 254, 283-284), the libels published about him fell within the rules governing private defamation and not within the rule of *Garrison* v. *Louisiana* (379 U. S. 64), where it was held that a prosecution for criminal libel of a public official with regard to his official conduct must be based upon false statements made with knowledge of their falsity or with reckless disregard of the truth.

During his summation, defendants' counsel sought to argue to the jury that any citizen is entitled to comment upon the character of a person who is a public official and that a critic of the official's private conduct should be entitled to the same protection as a critic of his official conduct.   The District Attorney objected that such was not the law and that, while counsel could argue what the law is, he could not argue what the law should be.   The objection was sustained and exception taken.

The Constitution of the State of New York (art. I, § 8) provides, as does section 418 of the Code of Criminal Procedure in substantially identical language, that in a criminal prosecution for libel, " the jury shall have the right to determine the law and the fact."   A long and bitter judicial struggle has been fought over the respective functions of court and jury not only in prosecutions for libel but in all criminal cases (*Sparf and Hansen* v.

*United States,* 156 U. S. 51; *People* v. *Sherlock,* 166 N. Y. 180, 184; *People* v. *Croswell,* 3 Johns. Cas. 337). It was not until 1863 that it was finally resolved in this State that the court, and not the jury, determines questions of law in criminal cases and that the jury is bound by the court's instructions on those questions (*Duffy* v. *People,* 26 N. Y. 588, 591). The same diversity of opinion was not similarly settled in the Federal courts until 1894 (*Sparf and Hansen* v. *United States, supra*).

In 1805, during this controversy, this State provided by statute (L. 1805, ch. 90) that in prosecutions for criminal libel, the jury shall have the right to determine " the law and the fact, under the direction of the court, *in like manner as in other criminal cases* " (emphasis added). At the time of this enactment, therefore, and its subsequent unqualified incorporation into the Constitutions of 1821 and 1846, it was generally believed that the jury determined the law and the fact in all criminal cases (*People* v. *Sherlock, supra*). The preamble to the enactment of 1805 makes it clear that this legislation was intended to erase " doubts * * * whether, on the trial of an indictment or information for a libel, the jury have a right to give their verdict on the whole matter in issue " and to eliminate the practice whereby the court directed or required the jury to find the defendant guilty " merely on the proof of the publication by the defendant, of the matter charged to be libelous, and of the sense ascribed thereto, in such indictment or information " (4 Lincoln, Constitutional History of New York, p. 142). The preamble to Fox's Libel Act (32 Geo. III, ch. 60) declares the same intention with but slight differences in language (see *Sparf and Hansen* v. *United States,* 156 U. S. 51, 134–135, *supra*; 2 Cooley, Constitutional Limitations [8th ed.], pp. 951–952).

It is impossible to review these earlier enactments and the events which surrounded them without observing two points of agreement among those in favor of the right of the jury to determine the law and the fact: (1) that such was the rule in *all* criminal cases and (2) that questions of law were for the court, questions of fact for the jury and mixed questions of law and fact for the jury on the general issue. Mr. Fox, in moving the introduction of his bill in the House of Commons in 1791, said that " there was a power vested in the jury to judge the law and fact, *as often as they were united;* * * * and this was the case not of murder only, but of felony, high treason, and of every other criminal indictment ". Mr. Pitt, supporting the bill, said that he " saw no reason why, in the trial of a libel, the whole consideration of the case might not go precisely to the unfettered judgment of twelve men * * * as it did in matters of felony

and other crimes of a high nature '' (29 Parl. Hist. 564–597, as cited in *Sparf and Hansen* v. *United States, supra,* p. 136 [emphasis added]). In the House of Lords in 1792, Lord LOUGHBOROUGH said that '' it was the admitted maxim of law, *ad quæstionem juris respondeant judices, ad quæstionem facti juratores*; but when the law and the fact were blended, it was the undoubted right of the jury to decide '' (29 Parl. Hist. 1296, 1297).

In New York, the enactment of our 1805 statute was preceded by the decision in *People* v. *Croswell* (3 Johns. Cas. 337, 366–368, *supra*), a prosecution for a libel on the President of the United States. Judge KENT (later Chief Justice and Chancellor) wrote that '' In every criminal case, upon the plea of not guilty, the jury may, and indeed they must, unless they choose to find a special verdict, take upon themselves the decision of the law, as well as the fact * * *. The law and fact are so involved, that the jury are under an indispensable necessity to decide both, unless they separate them by a special verdict. '' Alexander Hamilton, of counsel to the defendant in *People* v. *Croswell* (*supra*) argued that, '' in the general distribution of powers in our system of jurisprudence, the cognizance of law belongs to the court, of fact to the jury; that as often as they are not blended, the power of the court is absolute and exclusive. * * * That in criminal cases, the law and fact being always blended, the jury, for reasons of a political and peculiar nature * * * is entrusted with the power of deciding both law and fact '' (7 Hamilton's Works, 335, as cited in *Sparf and Hansen, supra,* p. 147).

As noted earlier, the first of these points of agreement was repudiated in *Duffy* v. *People* (26 N. Y. 588, *supra*) where it was held that the court determined questions of law in criminal cases, not the jury. It should be pointed out that, while the opinion in *People* v. *Sherlock* (166 N. Y. 180, 184, *supra*) indicates that prosecutions for libel were excepted from the holding in the *Duffy* case, no such exception appears in the *Duffy* opinion.

The second point of agreement — that questions of law unblended with questions of fact are for the court alone — remains the law. Jurors in a libel case do not decide questions pertaining to the admissibility of evidence or to the sufficiency of the indictment. They decide the law only in the sense that they are empowered to find general verdicts, involving both fact and law (*Duffy* v. *People,* 26 N. Y. 588, 592, *supra*). *People* v. *Yui Kui Chu* (273 N. Y. 191) is not to the contrary since in that case, the court charged the jury that if they adopted the English translation set forth in the indictment, the publication was

libelous per se. That charge was erroneous because it took from the jury the determination of the blended question of law and fact which the Constitution had reserved to it.

Applying the foregoing to the instant case, we think the trial court properly prevented defense counsel from arguing to the jury his erroneous interpretation of the rule to be derived from the recent decision of the United States Supreme Court in *Garrison* v. *Louisiana* (379 U. S. 64, *supra*). The legal effect of that decision was a pure question of law for the Trial Judge alone. If he decided that question erroneously, the defendants would have their remedy by way of appeal. A contrary rule which would permit prosecutor and defense counsel to argue questions of law to the jury, twelve persons unlearned in the law, with the victory to the more convincing of the two, does not commend itself. What was said in *Duffy* v. *People* (26 N. Y. 588, 591–592, *supra*) is applicable here: '' If jurors were to determine the law, its stability would be subverted, and it would become ' as variable as the prejudices, the inclinations and the passions of men. ' Every case would be governed, not by any known or established rule, but by a rule made for the occasion. Jurors would become not only judges, but legislators as well. '' The constitutional protection in prosecutions for criminal libel assures the right of the jury to pass on the general issue of guilt or innocence, to render a general verdict involving both law and fact. It does not entitle the jury to decide, rightly or wrongly, what it was that the United States Supreme Court or any other court held in a previous decision.

The judgments should be affirmed.

HOPKINS, J. (dissenting). I dissent and vote to reverse the judgments of conviction and to direct a new trial.

In his summation, counsel for the defendants openly sought to address argument on the law to the jury, contending that a prosecution for criminal libel would not lie against a person making statements concerning a public official, even though the accusations did not concern official action but private behavior. On objection by the prosecutor, defendants' counsel was prevented from arguing the law to the jury by the court, to which ruling the defendants excepted.

I think that the court's ruling was error. Our Constitution (art. 1, § 8) and statute (Code Crim. Pro., § 418) direct that the jury in a criminal libel action shall have the right to determine '' the law and the fact. '' I read these provisions literally, for they affect the fundamental privilege of free speech, and should not be curbed or diminished, for, as has been said rightly in

another context, but with relevance to the conduct of the defendants here, " it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions " (*Bridges* v. *California*, 314 U. S. 252, 270).

The historical setting of the jury's unique prerogative in criminal libel emerges from " the struggle that long prevailed between courts and juries as to their respective rights in prosecutions for libel " (*People* v. *Sherlock*, 166 N. Y. 180, 184). The early common law in England, shaped by the procedures of the Star Chamber, held that the jury in a criminal libel case had the duty only to determine whether the libel was published by the defendant and whether the publication and innuendoes applied to the party complaining; the court determined whether the publication was false and malicious (2 Cooley, Constitutional Limitations [8th ed.], p. 950 *et seq.*). Fox's Libel Act (32 Geo. III, ch. 60) was enacted by Parliament to overcome this ruling and to augment the power of the jury so as to allow it to make determinations both of the law and the fact. The trial of John Peter Zenger in colonial times (17 Howell's State Trials, 675) in New York sharpened the necessity for constitutional protection, for in that case the Judge indeed ruled that truth was not a defense, and Andrew Hamilton as defense counsel successfully argued to the jury that it was (note, 52 Col. L. Rev. 521, 524). In the famous case of *People* v. *Croswell* (3 Johns. Cas. 337, 369) Judge KENT observed that " a libel is a compound of law and fact. To separate them is difficult and dangerous, and, without a special verdict, the jury are authorized and bound to judge from a combined consideration of both. " Although his view did not then prevail, at least it furnished the impetus for the enactment of the statute in 1805 (L. 1805, ch. 90) which conferred on the jury the right to determine the law and the fact " under the direction of the court. " Since 1821 our Constitution has unqualifiedly commanded that the jury determines the law as well as the facts (*People* v. *Sherlock, supra*); and significantly the modifying phrase " under the direction of the court " in the 1805 statute has been discarded.

Certainly, the court may not instruct the jury that it must find a publication to be a criminal libel per se (*People* v. *Yui Kin Chu*, 273 N. Y. 191, 198). I would construe the Constitution in the same light as did Cooley, then writing at a time closer to the events which created the reason for its provisions (2 Cooley, Constitutional Limitations [8th ed.], p. 955) : " Whatever may be the true import of Mr. Fox's Libel Act, it would seem clear that a constitutional provision which allows the jury to determine the law, refers the questions of law to them for their rightful deci-

sion. Whenever such provisions exist, the jury, we think, are the judges of the law; and the argument of counsel upon it is rightfully addressed to both the court and jury. ''

Thus, the instructions of the Judge have been said to be advisory (cf. *People* v. *Walker,* 93 Cal. App. 2d 54; *State* v. *Armstrong,* 106 Mo. 395); and it has also been said that counsel may argue the law freely to the jury (*State* v. *Whitmore,* 53 Kan. 343; Ann. 67 ALR 2d 245, 277–279).

Counsel for the defendants had proposed his argument on the law to the court as a basis for a dismissal of the indictment and as a request for a charge to the jury, in accordance with counsel's construction of the opinion of the Supreme Court in *Garrison* v. *Louisiana* (379 U. S. 64). When the court declined to grant counsel's motion or to follow his request, that refusal did not end counsel's constitutional right to argue his views to the jury. The argument clearly was made in good faith and the jury was entitled, if it chose, to accept its proposition as law and to acquit the defendants. [1]

Indeed, in *Rosenblatt* v. *Baer* (383 U. S. 75, 86), the Supreme Court has made clear that '' Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees '', then the constitutional standards must be applied in actions brought to enforce personal liability for libel, and, a fortiori, in a criminal libel prosecution. Moreover, in the same case it was said (p. 88) that '' it is for the trial judge *in the first instance* to determine whether the proofs show respondent to be a ' public official ' '' (emphasis supplied). As Mr. Justice BLACK stressed in his concurring opinion, the italicized words give effect to the role of the jury in a criminal libel prosecution to decide all elements of the guilt of the defendant (p. 96); that is to say, although the Trial Judge first determines the question of admissibility of evidence to go to the jury and the question whether the evidence presents a case for the decision of the jury, the ultimate question whether the defendant is a public official within the meaning of the constitutional standard must be resolved only by the jury. Equally, it seems to me, it follows that it is a matter for the jury to decide

1. Indeed, it should be noted that the author of the annotation concerning '' Constitutional Aspects of Libel or Slander of Public Officials '' in 95 ALR 2d 1450 considered that the principles expounded in *New York Times Co.* v. *Sullivan* (376 U. S. 254) likely apply to criminal libel (Ann. 95 ALR 2d 1451, n. 8).

370

whether the statement said to constitute a libel bears on the qualifications of the defendant for public office.

Essentially, this was the tenor of the argument which counsel for the defendants attempted to make to the jury here and was prevented from making. Whether the argument presented questions of law or of fact or of mixed law and facts seems to me immaterial — in any event the jury was the sole arbiter of these questions under our law and the defendants' rights were infringed when the right to make the argument was denied them.

Hence, it was error to foreclose the argument of counsel to the jury in this prosecution for criminal libel — an exception to the general rule in criminal cases (cf. *Duffy* v. *People,* 26 N, Y. 588) — and the judgments should be reversed and a new trial directed.

HILL, RABIN and BENJAMIN, JJ., concur with UGHETTA, Acting P. J.; HOPKINS, J., dissents and votes to reverse the judgments and grant a new trial, in opinion.

Judgments affirmed.

