PEOPLE v. KATHAN.

(Supreme Court, Appellate Division, Second Department. January 21, 1910.)

1. BRIBERY (§ 1*)—"UPON ANY UNDERSTANDING OR AGREEMENT"—"ATTEMPTS FRAUDULENTLY TO INDUCE"—BRIBING WITNESSES—ELEMENTS OF CRIME.

Under Pen. Code, § 113 (Penal Law, § 2440; Consol. Laws, c. 40), making it a felony to give or offer to a witness, or one about to be called as a witness, any bribe upon any understanding or agreement that his testimony shall be thereby influenced, or to attempt by any other means fraudulently to induce any witness to give false testimony, the essence of the crime is the understanding under which the money was given to a prospective witness and not the giving of the money; the words "upon any understanding or agreement," and "attempts fraudulently to induce," being equivalent to "with the intent."

[Ed. Note.—For other cases, see Bribery, Dec. Dig. § 1.*]

2. CRIMINAL LAW (§ 24*)—INTENT—EVIDENCE.

While criminal intent will be presumed from the commission of an unlawful act, the act itself being evidence of the intent with which it was committed, yet, where a specific criminal intent is essential to make an act criminal, such intent must be proved.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 26, 27; Dec. Dig. § 24.*]

3. CRIMINAL LAW (§ 507*)—ACCOMPLICES—WHO ARE.

In a prosecution for bribing a prospective witness in a robbery prosecution, in which accused was counsel for the defendant, a witness, who testified that accused gave him a sum and told him to give it to the person claimed to have been robbed and told him not to be so quite sure who robbed him when the case was tried, was accused's accomplice if a crime was committed, so that accused could not be convicted on the accomplice's testimony unless corroborated by some other evidence tending to connect him with the crime.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1082–1098; Dec. Dig. § 507.*]

4. CRIMINAL LAW (§ 741*)—TRIAL—PROVINCE OF COURT—SUFFICIENCY OF CORROBORATIVE TESTIMONY.

Whether there is any evidence corroborating an accomplice's testimony so as to base a conviction thereon is a question for the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1717; Dec. Dig. § 741.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. CRIMINAL LAW (§ 511*)—EVIDENCE—TESTIMONY OF ACCOMPLICE—SUFFICIEN-
CY OF CORROBORATIVE EVIDENCE.

In a prosecution for offering a bribe to a prospective witness, evidence
*held* to show no evidence corroborating 'an accomplice's testimony that
accused gave him the money to give the witness for the purpose of in-
fluencing his testimony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1127–1137;
Dec. Dig. § 511.*]

6. CRIMINAL LAW (§ 417*)—EVIDENCE—STATEMENTS OF THIRD PARTIES—CON-
VERSATIONS IN ACCUSED'S ABSENCE.

In a prosecution of an attorney for offering a bribe to a prospective
witness in a case which he defended, in which accused and his client
were the only persons directly interested in giving the bribe, others being
merely their agents, it was error to admit evidence of conversations .be-
tween others in accused's absence which tended to lead the jury to
believe that accused was one of an organized gang banded together to
commit a crime.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 950–967;
Dec. Dig. § 417.*]

7. CRIMINAL LAW (§ 1169*)—APPEAL—HARMLESS ERROR—ADMISSION OF EVI-
DENCE—PREJUDICIAL EFFECT.

The inevitable effect of the evidence on the jury made its admission
prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3137–
3143; Dec. Dig. § 1169.*]

8. CRIMINAL LAW (§ 1059*)—APPEAL—PRESENTATION BELOW—MOTION TO DIS-
MISS INDICTMENT—EXCEPTION TO DENIAL—EFFECT.

. The exception to the denial of accused's motion at the close of the
case to dismiss the indictment upon the ground of failure to prove the
case, that there was not sufficient corroboration of the alleged accom-
plice's testimony, and that the case should not be submitted to the jury,
was sufficient to save for review anything occurring at trial tending
to prejudice accused's rights, though no specific objection or exception
was taken.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2671; Dec.
Dig. § 1059.*]

9. CRIMINAL LAW (§§ 1030, 1048*)—OBJECTIONS—NECESSITY—REVIEW BY AP-
PELLATE DIVISION.

Under Code Cr. Proc. § 527, authorizing the Appellate Division to grant
a new trial when satisfied that the verdict against accused is against
the weight of the evidence, against the law, or that justice requires it,
whether or not exceptions were saved below, the Appellate Division may
review errors prejudicing an accused's rights, though no objection or
exception is taken below.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2619–2621,
2656, 2657; Dec. Dig. §§ 1030, 1048.*]

Burr, J., dissenting

Appeal from Trial Term, Kings County.

Rutherford W. Kathan was convicted of bribery, and he appeals.
Reversed, and new trial granted.

Argued before WOODWARD, JENKS, BURR, THOMAS, and
RICH, JJ.

John P. Lamerdin, for appellant.

John F. Clarke, Dist. Atty. (Robert H. Elder, on the brief), for re-
spondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODWARD, J. On April 27, 1909, the defendant, a lawyer, was convicted upon an indictment under section 113 of the Penal Code (Penal Law, § 2440; Consol. Laws, c. 40), charging him with giving a bribe to a person about to be called as a witness, upon the understanding or agreement that the testimony of such person should thereby be influenced; and, in a separate count, with feloniously and fraudulently attempting to induce said witness to withhold true testimony.

The indictment was based on the following facts: One Louis Wolf was indicted for grand larceny by the grand jury of Kings county, and retained the defendant to represent him in the matter as his attorney. The indictment against Wolf charged him with having taken the sum of $50 from the pocket of one Frank Haibele. A few days before Wolf's case was to be called for trial, the defendant, Kathan, gave the sum of $75 to a man named Heene, with instructions to deliver the amount to Haibele. The validity of the judgment convicting Kathan of the crime charged rests entirely upon the evidence of the purpose for which this money was paid.

It appears that Kathan, through the agency of friends, brought about a meeting between Haibele and Heene, who had been selected to approach Haibele in regard to the Wolf case. The defendant's testimony is that his sole object in doing this was to induce Haibele to accept restitution from Wolf, who would then throw himself upon the mercy of the court. The following transcript from the record is Heene's story of what took place between himself, Kathan, and Haibele in connection with the receipt and payment of the money by him:

"The Witness: It was said, and I told him that I was asked and been told that he was robbed, and he explained that he was robbed. So I told him that I had been instructed if he would take the money back that was taken away from him if he would be satisfied. So I gave him my—I said, the way I was informed, there was a prominent business man from East New York. He says, no, he could not do that, because he lost some time and some wages, so I says. 'I don't know what the proposition is, but,' I says, 'let me know what you will take.' By the Court: Q. Who said that? A. I said so, your honor. So he says he could not let us know, and I could not tell those people before the next day. By Mr. Elder: Q. Now, do you recall anything else that was said in that conversation on Monday? A. Not there in— Q. Well, if you do not remember anything more, what happened on the next day? A. I told Mr. Kathan, I do not know if it was the same night—Mr. Kathan and Gotthelf— that this man was willing to take the money which was stolen from him and $25 for his loss in wages and expenses going through. So— Q. Did Kathan say anything? A. Kathan said he is satisfied to do this. Q. When you had this conversation with Kathan, was anybody present besides you and Kathan? A. I don't know exactly if Mr. Gotthelf was present or not. Q. You don't recall? A. I don't recall this. By the Court: Q. Wait a minute. Kathan gave you what money? What did he give you—how much money? A. Seventy-five dollars, as far as I understand it. I did not count the money. By Mr. Elder: Q. Don't you know how much money he gave you? A. I did not count it. The way I got it I put it in a paper. By the Court: Q. What did he give you, a roll of bills or a bag of coin, or what? A. A roll of bills, your honor. By Mr. Elder: Q. Well, what was said there about the way it should be given, if anything was said? A. I should give it to the man that nobody seen it, and tell the man when it comes up in the court that he should not be so quite sure who was picking his pockets. Mr. Kathan said that. I put the money in an envelope. Mr. Kathan did not tell me to put the money in an envelope. He paid me the money on my head waiter's desk. The money was paid me in the afternoon or around dinner. * * * By the Court: Q. Well, in these talks that

you had with Kathan, did he mention the name of this prominent man in East New York who was accused? A. Yes, your honor. Q. What was the name he told you? A. Wolf. Q. Did he tell you what his first name was? A. Yes. * * * After getting the money I went down to Broadway to meet this butcher. When I met him I says, 'I got the money from those people.' He says, 'All right.' * * * So we went up the elevated station, and handed him the money which I was given by Mr. Kathan, and the next moment I was arrested. * * * I guess I stated before that the witness Haibele should not —he asked me what to do in court, what he should say. I says, 'Don't remember so quite sure for it who picked your pocket.' "

Haibele's testimony as to his arrangement with Heene is substantially the same, and he further testified that Heene said to him before the money was paid:

" 'Well, then, you know what you have got to say. You only say you ain't sure any more.' * * * That I ain't sure any more that it is Wolf who stole my pocketbook. * * * 'Then it is all over, and you got your money.' "

To this Haibele testified he replied:

"Well, Mr. Heene, I can't do that. I was three times in the court. I only told the truth, and I swore every time. Now I should say different, I will swear false."

Haibele then took the money, handed it over to a detective, who arrested Heene.

The testimony of Heene, quoted above, as to Kathan's instructions when he gave him the money to pay Haibele, is the only direct evidence in the case upon that point. Kathan denies that he said anything of the kind of Heene. This raises the one vital point in the case. The corpus delicti, if a crime was committed, was not the paying of the money by Kathan, which is conceded, but the agreement or understanding under which it was given; the intent on the part of Kathan in making the payment through Heene to Haibele.

The section under which the defendant was convicted reads:

"A person who gives or offers or promises to give, to any witness or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced, or who attempts by any other means fraudulently to induce any witness to give false testimony or to withhold true testimony, is guilty of a felony."

The words "upon any understanding or agreement," and "attempts * * * fraudulently to induce," are tantamount to "with the intent."

While criminal intent will be presumed from the commission of an act in its nature unlawful, the act itself being evidence of the intent, it is also true that, where an act becomes criminal only through the existence of a specific intent, such intent must be proved. Stokes v. People, 53 N. Y. 179, 13 Am. Rep. 492; Miller v. People, 5 Barb. 203; Lawson on Presumptive Evidence, p. 473.

If a crime was committed by the defendant, Heene was an accomplice; and it is provided by section 399 of the Code of Criminal Procedure that:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

In People v. Plath, 100 N. Y. 590, 3 N. E. 790, 53 Am. Rep. 236, in reversing a judgment of conviction of the crime of abduction, the court said in regard to the kind and degree of corroboration required by section 283 of the Penal Code (Penal Law, § 71; Consol. Laws, c. 40):

"In cases where corroboration is required, there has been some diversity of opinion in the authorities, as to the particular facts which should be corroborated, and the extent of the corroboration needed in order to comply with the rule; but it is now conceded to be the general rule that it should tend to show the material facts necessary to establish the commission of a crime, and the identity of the person committing it. When an offense was formerly proven by accomplices, it was the usual practice of trial courts to advise an acquittal, unless such evidence was in some respects corroborated by other testimony (although at common law a conviction upon the evidence of the accomplice alone was sustainable). In those cases the extent and degree of corroboration rested in the discretion of the trial court, and necessarily varied according to the circumstances of the case. Although such cases are not strictly analogous to those where corroboration is required by statute, they yet furnish some help in determining the degree of proof required in the latter case. The rule as to the corroboration of an accomplice is stated in Roscoe's Criminal Evidence, 122, as follows: 'That there should be some fact deposed to, independently altogether of the evidence of the accomplice, which taken by itself leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it.' Russell on Crimes, 962, says: 'That it is not sufficient to corroborate an accomplice as to the facts of the case generally, but that he must be corroborated as to some material fact or facts which go to prove that the prisoner was connected with the crime charged.' 1 Greenleaf on Evidence, § 381, lays down the rule, as held by some, that it is 'essential that there should be corroborating proof that the prisoner actually participated in the offense.'"

In People v. Courtney, 28 Hun, 592, a judgment of conviction for forgery was reversed. The main witness for the prosecution was an accomplice, and it was urged on behalf of the defendant that there was no corroboration of his evidence such as is contemplated by section 399. It was said by Mr. Justice Brady:

"The language of the statute, as we have seen, is that the accomplice must be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. The existence of intimate relations is not a circumstance from which participation in the guilty acts of an associate is to be presumed, because it is consistent with innocence. The association may be continued, and may be marked by all the circumstances which characterize the association of the accomplice and the appellant herein, and yet be an innocent one. In other words, the appellant might not have been advised in any way of the intended crime by the accomplice. It is not, in the language of the section, such other evidence as tends to connect the appellant with the commission of the crime. And this view of such a relation presents itself with peculiar force when the associate upon his trial for an offense charged against him, the proof of which rests chiefly upon the testimony of the accomplice, solemnly denies all participation in the crime charged."

The district attorney finds sufficient corroboration of Heene's testimony as to Kathan's instructions to him, that is, as to Kathan's intent, (1) in a bare recital of the admitted facts of the case; (2) in Kathan's apparent interest in Heene when he was arrested on a charge of bribery growing out of the same facts, and his exclamation to Heene's counsel, Heyser, "My God, I am in it, Heyser"; and (3) in Kathan's anxiety over a report that Heene was going to turn state's evidence. We are unable to concur in this view.

The admitted facts do not tend to prove that Kathan caused the money to be paid to Haibele for the purpose of bribing him. · Heene's testimony stands alone on that point, and is denied by Kathan. When Kathan heard of Heene's arrest for handing the money to Haibele, he had reason, as the event proved, to show a lively interest in the situation, even though innocent; and his exclamation, "My God, I am in it, Heyser," appears in the testimony of the witness Heyser as follows:

"I told Kathan, when he told me what had happened, that I thought that he was in it too. By the Court: Q. What did he tell you? A. Why, he told me that they had sent Mr. Heene to—I did not know at that time who the man was or what his name was—to somebody to give him some money in the Wolf case. Q. Did he say what it was for? A. No, he did not say what it was for. By Mr. Elder: Q. Well, what else did he say, if you recall? A. He said, 'My God, I am in it, Heyser.' I think Mr. Kathan said this, either Mr. Kathan or·Gotthelf. They were all in the room together. I believe it was Mr. Kathan that said that."

Whether there is any evidence of corroboration is a question of law for the court (People v. Farina, 134 App. Div. 110, 118 N. Y. Supp. 817), and we feel constrained to hold that there was none in this case going to the essential element of the crime charged.

The record discloses a number of instances where conversations had between divers individuals in the absence of the defendant were admitted in evidence over the objection and exception of the defendant's counsel. The district attorney seeks to justify these rulings on the ground that the conversations were in furtherance of a conspiracy to bribe Haibele, and cites People v. Miles, 123 App. Div. 862, 108 N. Y. Supp. 510, in support of his contention. That case was a prosecution for conspiracy, and the defendant's co-conspirators were all directly interested in the plan to defraud the city. In this case, the only persons directly interested in the giving of the money which constituted the alleged crime were the defendant and his client, Wolf. The others were merely their agents. The evidence of these conversations must necessarily have tended to impress the minds of the jurors that the defendant was one of an organized gang, banded together to commit a crime, and so was prejudicial. Its admission was error. See Coleman v. People, 58 N. Y. 555, 561.

From all the evidence it seems quite probable that the only motive of the defendant in causing the money to be paid to Haibele was that of restitution. The extra $25 was paid at Haibele's own suggestion; he said he had lost five days' time in the matter, and that he should be compensated for that in addition to the return of the money taken from him. If bribery had been intended by the defendant, it is reasonable to assume he would have offered an amount sufficient to afford a substantial inducement for Haibele to commit perjury. And there was nothing furtive in the actions of the defendant; he took several persons into his confidence. He was a lawyer, and may be presumed to have known the penalty of the crime of bribery. Some degree of secretiveness would have been his first aim if he had had a criminal intent.

If it be contended that anything occurred in the conduct of the trial tending to prejudice the rights of the defendant, which cannot be

reviewed on this appeal because of the want of specific objection and exception, the answer is that the exception to the ruling of the court denying the defendant's motion to dismiss the indictment, made at the close of the whole case, was sufficient to raise all these questions. This appears in the record as follows:

"Mr. Baldwin: I move upon the record that your honor dismiss this indictment upon the ground that there has been a failure here to prove the case, that with relation to the proof offered by alleged accomplices in this alleged crime there has not been any sufficient corroboration, that there has been a failure on the whole case, and that the case should not be submitted to a jury. (Motion denied. Defendant excepts.)"

But no exception was necessary. In cases of this kind, the Appellate Division has broader powers of review than the Court of Appeals. Certain powers can be exercised by the Court of Appeals only when the judgment is of death. No such limitation is placed upon the Appellate Division. Code Cr. Proc. §§ 527, 528. This distinction is thus pointed out by Judge Cullen in People v. Sherlock, 166 N. Y. 180, 183, 59 N. E. 830:

"By section 527 of the Code of Criminal Procedure the Appellate Division is authorized to grant a new trial in a criminal case when satisfied that the verdict against the prisoner is against the weight of evidence, against the law, or that justice requires it, whether exceptions have been taken in the court below or not. But by section 528, which regulates appeals to this court, the broad power given to the Appellate Division of the Supreme Court is bestowed upon us, only where the judgment is of death. In other cases we can take notice only of legal errors appearing in the record or raised by exception on the trial. People v. Driscoll, 107 N. Y. 414 [14 N. E. 305]; People v. Lyons, 110 N. Y. 618 [17 N. E. 391]; People v. Leonardi, 143 N. Y. 360 [38 N. E. 372]."

This trial was in the Supreme Court. That court consists of all its justices, and the Appellate Division is the constituted quorum of that court, designated to determine whether trials have been according to the judgment of the court, as distinguished from the judgment of the individual member who happens to preside at the particular trial.

The judgment should be reversed, and a new trial granted.

JENKS and RICH, JJ., concur.

THOMAS, J. (concurring in result). Defendant, Kathan, a lawyer, engaged to defend Wolf under indictment for picking the pocket of Haibele, authorized Heene to pay Haibele the money taken and $25 in addition, and delivered the money to Heene for that purpose. Heene handed the money to Haibele. The people charge that Kathan's purpose was to bribe Haibele. Kathan's statement is that his purpose was to make restitution and pay Haibele for time lost, so that upon a plea of guilty by Wolf the restitution might lessen the punishment. Hence the act of payment was a crime only if done with intent to bribe. Heene testified to instructions from Kathan, which, if given, clearly showed guilty purpose. Kathan denied that he gave such instructions. So the accomplice affirms; the principal denies. The evidence of an accomplice has not probative strength to overcome the presumption of innocence. It must be aided by some other evidence. The court

must decide whether corroborative evidence is present. The jury must decide whether such evidence is sufficient, in connection with that of the accomplice, to establish the offense beyond a reasonable doubt. The evidence of the accomplice segregated is impotent. Corroborative evidence may give it persuasive power. The confirmatory evidence furnishes a means for testing the truth of the statements of the confessed criminal, and, if added to it, proof may result. Could the jury in the due administration of justice find a verdict of guilty in this case, if uninformed that the evidence of the accomplice unsupported was powerless?

Evidence corroborative in some degree is found: (1) In the acknowledged participation in the payment of the money, although for an avowed lawful purpose; (2) in the statements and exclamations made to Heyser, the lawyer for Heene, after the latter's arrest. Such evidence is assisted by inferences from the circumstances and nature of the act itself. Such evidence in a legal sense tends to corroborate, and it was the function of the jury to determine whether it did corroborate, Heene, and whether his evidence so helped amounted to requisite proof of guilt. By inadvertence, and in absence of request or suggestion by the defendant's counsel, the learned trial justice did not state to the jury the law that made the evidence of Heene usable or not usable. The jury was not told that the evidence of Heene standing alone could not show a guilty purpose on the part of Kathan, and that there must be other evidence tending to show guilty purpose, and so found by them, which, united to the evidence of the accomplice, if believed, established the crime beyond a reasonable doubt. No jury could intelligently answer the submitted question without advisement that the evidence of an accomplice has no intrinsic vigor unless energized by independent and credible evidence. This advice was omitted in a charge showing painstaking impartiality. Highly capable counsel silently acquiesced. Should this court decide that what was so overlooked by all concerned demands a new trial?

Some of my associates are of the opinion that there was no corroborative evidence. I do not concur in such conclusion, but nevertheless here is judicial opinion that there was no corroborative evidence. In the light of such opinion, how much the more important does it seem that the very question whether there was corroborative evidence should have been submitted to a jury!

I think a new trial should be granted upon the ground that justice in its due administration in this case demands a verdict based upon proper instruction as to the use that may be made by the jury of the evidence of an accomplice.

WOODWARD, JENKS, and RICH, JJ., concur, save as to the sufficiency of the corroborative evidence.

BURR, J. (dissenting). I am constrained to record my dissent from the decision about to be made. It is undoubtedly true that when a person has been convicted of a crime this court may order a new trial if it be satisfied that justice requires it, "whether any exception shall have been taken or not in the court below" (Code Cr. Proc. § 527), but a de-

fendant cannot claim as a matter of right a review of errors to which no objection and exception has been taken (People v. Jackson, 196 N. Y. 357, 89 N. E. 924). The language of section 528 of the Code of Criminal Procedure, which was under consideration in that case, and that of section 527, above referred to, is identical in this respect. It is true that the broad power given to this court by section 527 applies to every criminal case, while similar power is bestowed upon the Court of Appeals by section 528 only when the judgment is of death. But the case above cited was such a case, and the language of Chief Judge Cullen in delivering the opinion of the court seems to me peculiarly apt on this occasion. He says, referring to the rule that such review is not a matter of right:

"The reason and justice of this rule is obvious. The most learned and careful judge will at times during the trial of an action fall into an error which he would at once correct if his attention were called thereto. The purpose of an objection and exception is to call the attention of the judge to the ruling complained of, that he may correct the error if such it is. To permit the party to remain silent and suffer the error to go unchallenged and claim on an appeal from an adverse judgment the benefit of the error, as if objection and exception had been taken, would not conduce to the proper administration of justice nor tend to secure a fair trial for the defendant, but simply give him an opportunity to reverse on appeal a proper judgment."

It seems to me impossible for any one to read the record in this case and have the slightest doubt of the defendant's guilt. Aside from other corroborating evidence, the conduct and acts of the defendant as testified to by him are inconsistent with any innocent purpose upon his part in placing money in the hands of the witness Heene. The controversy in respect to which it is charged that bribery was committed was not one between Wolf, the accused, and Haibele, who was the victim of his criminal act. It was between the people of the state of New York, on one side, and the said Wolf, on the other. If the only purpose of giving money to Haibele was to obtain a mitigation of sentence after a plea of guilty upon Wolf's part, it was quite sufficient to be able to show the court at that time that the money feloniously taken had been restored. After a plea of guilty, it was unnecessary to placate Haibele by paying him a sum in excess of that taken from him, and it was a matter of indifference to the people of the state whether or not he was favorably disposed toward the accused. The fact that a larger sum than was required to make restitution was given to Haibele is conclusive evidence to my mind that the purpose of it was to produce some effect upon him and secure from him some favorable consideration toward the man who had robbed him. In no other way could he make such favorable consideration of any avail than in respect to the testimony which he might give upon the trial.

Justice is satisfied when a person accused of crime has a fair and impartial trial. If upon such a trial the evidence of his guilt is overwhelming, justice does not require that an appellate court should go out of its way to scrutinize the record carefully to see whether any technical rule of law has not been complied with and to reverse a judgment founded upon such evidence, if perchance one of such rules has been overlooked. In this case the accused was defended by one of the ablest counsel in the county. He may have thought, and very wisely

too, that it was good policy not to have the attention of the jury called to the rule respecting the necessity of corroborative evidence lest by so doing their attention might be concentrated upon such evidence more strongly than it would otherwise have been. After having pursued that policy, if new counsel are to persuade an appellate court to reverse a perfectly just judgment because the trial court did not of its own motion refer to a well-known rule of law, it seems to me that a criminal trial ceases to be an inquiry after the truth and becomes, instead, a "wit combat."