THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH CONTI and Another, Appellants, Impleaded with PETER FERRONE, Defendant.

Second Department, January 15, 1926.

Crimes — appeal — record is defective under Code of Criminal Procedure, § 485-a, and Rules of Second Department of Appellate Division, rule 19 — evidence — robbery — evidence by complaining witnesses that they identified defendants at police station is incompetent — no objection made to testimony and defendants' counsel cross-examined thereon — trial court emphasized testimony as to prior identification — error in admission of testimony is not technical within Code of Criminal Procedure, § 542 — admissibility of evidence will be considered on appeal in a criminal case though no objection made or exception saved — conviction reversed.

The record on appeal in this case is defective in that it does not contain statements of defendants before sentence required by section 485-a of the Code of Criminal Procedure, and does not contain a certificate of reasonable doubt granted in the case, nor a statement that an opinion was filed by the justice who granted the certificate or a copy of the opinion if one was filed, as required by rule 19 of the Rules of the Second Department of the Appellate Division of the Supreme Court and, furthermore, the orders appealed from are not printed in the record.

Testimony by the complaining witnesses on behalf of the prosecution that they identified the defendants at the police station a short time after the alleged robbery was committed, which testimony was in detail as to the method of identification, was incompetent and should not have been admitted.

In view of the fact that the question of identification of the defendants was the principal question in the case and that the trial court emphasized the testimony by the complaining witnesses relating to the identification of the defendants at the police station and on the preliminary hearing, the error in admitting the incompetent testimony is not technical within the meaning of section 542 of the Code of Criminal Procedure.

The Appellate Division on an appeal from a judgment of conviction in a criminal case will consider the effect of the admission of such incompetent testimony, though the attorney for the defendants not only did not object to its admission but actually cross-examined the complaining witnesses in reference to the prior identification, since the admission of the testimony was clearly prejudicial to the

rights of the defendants, and since it is not necessary in a criminal case that an objection be made or an exception saved to the improper admission of incompetent testimony in order that the Appellate Division may consider the same on appeal.

APPEAL by the defendants, Joseph Conti and another, from a judgment of the County Court of Dutchess county, entered in the office of the clerk of said county on the 4th day of March, 1924, convicting them of the crime of robbery in the first degree; also from an order entered in said clerk's office denying defendants' motion for a new trial on the ground of newly-discovered evidence, and also from an order entered in said clerk's office denying defendants' motion for a new trial made upon the minutes.

*Caesar B. F. Barra* [*Ralph J. Barra* with him on the brief], for the appellants.

*Allen S. Reynolds, District Attorney,* for the respondent.

KELLY, P. J. The record and the points submitted on this appeal do not comply with the Rules of Practice and if this appeal were from a judgment in a civil action we would be obliged to return the papers to counsel for correction. The statements of defendants before sentence (Code Crim. Proc. § 485-a) are not printed. It is stated in the points of both counsel that a certificate of reasonable doubt was granted, but the certificate is not printed in the points nor is it stated whether an opinion was filed by the justice who granted the certificate with a copy of such opinion, as required by rule 19 of this department. The orders appealed from are not printed in the record.

The indictment contains four counts in which defendants are charged with the commission of crime at Poughkeepsie on April 22, 1923. The first count charges them with the crime of robbery in the first degree (Penal Law, § 2124) with a dangerous weapon. The second count with the same crime with force and violence. The third count charges them with the crime of grand larceny in the first degree (Penal Law, § 1294), at the same time and place. The fourth count charges them with the crime of criminally receiving stolen property in the first degree (Penal Law, § 1308), at the time and place aforesaid. The record shows that they were indicted on June 5, 1923, that they were brought to trial on February 14, 1924, in the County Court of Dutchess county, that the trial proceeded on February 14 and 15, 1924, and that the jury found the defendants guilty as charged. Sentence was postponed several times and they were finally sentenced on March 4, 1924. The notice of appeal is dated March 6, 1924. It is stated in the points that a certificate of reasonable doubt was granted on April

1, 1924, and that defendants were released on bail in the sum of $5,000 each. The appeal was brought on for argument in this court on December 14, 1925.

The two complaining witnesses testified on the trial that about half-past ten o'clock on Sunday night, April 22, 1923, three men armed with revolvers entered the store of one of the said witnesses in Poughkeepsie, assaulted the witnesses, and by force and arms and threats took from one of them sixty dollars in bills and from the other a watch chain. At the trial the complaining witnesses identified the two defendants as two of the men who robbed them. The three robbers backed out of the store with their revolvers pointed at the witnesses, and it was the claim of the prosecution that they went away in a waiting automobile. The complaining witnesses notified the police by telephone, and about twelve o'clock the same night the two defendants were arrested by the State Police at Fishkill while traveling south in an automobile on the Albany Post Road. With the two defendants in the automobile were two other men. The four men were brought back to Poughkeepsie and turned over to the city police. As already stated, the complaining witnesses testified that the defendants were two of the three men who entered their store and robbed them.

But the prosecution was not satisfied with that evidence, and in answer to questions asked by the district attorney, one witness related his conversation with the Poughkeepsie police. He said he described the men to the police over the telephone and told them that his assailants had gone south towards Wappingers Falls, Fishkill and New York, although there was nothing in his direct story to show that he knew where they went. And the witness was questioned further by the district attorney and testified that later the same night or about two o'clock the next morning, he went to the police station in Poughkeepsie and saw the three men in the custody of the police. He was asked how he identified the men in the police station, and he related that " there was a group of people in the station beside these four men standing, two were present and the other in jail and the other one that was in the car, the driver of the car; at first I sized them up for a few seconds to be sure before I commit myself and as soon as I ascertained the fact that they were the men, I picked them out; first one and the second one was the driver, I excluded him and the third one was again one of the men and the other fellow, before I said he was the one, I had a special notice of his gold crown and I took notice when he hit my brother, he grinned and he showed that, and to be more sure of that, I opened his mouth for more verification, and I said he is the man that struck my brother, and

I said, these are the three men.  Q. Will you tell the jury how you picked out these men and identified them?  A. The men, with a bunch of their friends.  Mr. Mylod [defendants' counsel]: I object to the identification at this time on the ground that the identification is not a fair identification, the complaining witness in this case having previously seen these men and having identified them at that time, and I object at this time to any questions of identification that he may desire to testify to, on the ground he identified them on the night this offense was committed and, therefore, after having had the opportunity of seeing these men in the station house, he seeks to identify them again.  The Court: Overruled.  Mr. Mylod: Exception.  A. They were lined up with several others of their friends and acquaintances, including a brother of the man that held me up, Ferri, and some of them was standing and some was sitting, and when I was asked to identify them, I went over and picked each one out and told the Judge what each one done, just as positive I was then as I was on the first time I identified them."

This evidence was introduced by the district attorney without objection to its competency by the learned counsel for the defendants other than that above set forth, and it is also true that on cross-examination the counsel for defendants asked the witness to state in detail what description of his assailants he gave to the police.  He also cross-examined the witness as to the happenings at the police station and as to the details of a subsequent identification when the defendants were arraigned in the City Court concerning which the district attorney had asked no questions. The same procedure was followed on the examination of the second witness for the prosecution.  Having positively identified the two defendants as two of the men who entered the store and robbed him — this second witness testified that after the three men left the store he watched them and saw them get into an automobile which started " straight down Lincoln avenue until I didn't see them."  The district attorney also interrogated this second witness, without objection by the defendants, as to the identification of the defendants at the police station by his brother, the complainant, and by himself, and again the witness was cross-examined as to the identification at the police station and at the City Court. And on redirect the district attorney asked him if there was any doubt in his mind as to the identification of the defendants in the police station and the witness answered, " No doubt, I am positive." The police officer who apprehended the defendants, called as a witness for the prosecution, was asked by the district attorney

if he was present when the two previous witnesses identified the defendants at the police station, and he answered in the affirmative. One Crouse, a member of the State Police, and Hof, a sergeant of police in Poughkeepsie, were also asked by the district attorney if they were present at the police station when the complainant and his brother identified the defendants, and they each replied in the affirmative. The prosecution having rested, the defendants, who took the stand in their own defense, denied all complicity in the crime and presented evidence to establish an alibi. They also called two character witnesses.

The Court of Appeals has decided that while there is nothing wrong in an identification at the police station for the preliminary purpose of determining whether a defendant should be held, " It was quite another thing, however, to prove *de novo*, on the trial under review, that the witnesses who here testified to the defendant's identity had given similar testimony in the police station. This was, in effect, but a corroboration of these witnesses by their own previous declarations or acts. * * * It was nothing more nor less than a bolstering of the present testimony of these witnesses by showing that on a prior occasion they said or did the same thing. Stated thus broadly, this was obviously a self-serving performance of no probative value, and yet strongly calculated to influence a jury of laymen not versed in the rules of evidence." (*People* v. *Jung Hing*, 212 N. Y. 393. To the same effect *People* v. *Seppi*, 221 N. Y. 62; *People* v. *Marendi*, 213 id. 600; *People* v. *De Martini*, Id. 203.)

The learned district attorney in discussing the appellants' argument that this evidence was improper and prejudicial, says in his points: " Whether or not error was committed in admitting evidence as to the identification by the complainant and his brother of the defendants in the police station and the City Court, rests largely upon whether or not the rule set forth in the case of *People* v. *Jung Hing* (212 N. Y. 393) and other cases following it, is the established law in this State upon this question, for if such be the case, there can be no question but that error was committed both by the introduction of this evidence and in the subsequent charge to the jury by the court."

He says that the *Jung Hing* case was a capital case and that in such cases the courts are extremely solicitous to see that the rights of convicted defendants are protected, and that while the same rule has been followed in cases other than capital cases (*People* v. *Visiconti*, 182 App. Div. 894; *People* v. *Cunneen*, 184 id. 575; *People* v. *Frasco*, 187 id. 299; *People* v. *Ragazinsky*, 195 id. 743; *People* v. *Russell*, 197 id. 239), they were all cases where

the evidence of the identity of the defendant was vague or unconvincing, whereas in the case at bar the witnesses testified positively to the identity of the defendants. We think the decision in *People v. Jung Hing (supra)* is the established law in this State upon this question, and that it applied to the trial in the case at bar as well as in a capital case. It is best for the prosecuting officer on the trial of a criminal case, having established the identity of the defendant by the testimony of witnesses to the commission of the crime or by other competent evidence, to leave these subsequent identifications by the same witnesses alone. If the defendant opens the door by cross-examination of the witness with regard to subsequent identification or lack of subsequent identification, a different question might be presented. In the case at bar the district attorney introduced the subject on his direct examination. And when the learned county judge came to charge the jury in the case at bar, he emphasized the importance of the incompetent testimony so as to practically make it the turning point of the case. He charged the jury properly as to the presumption of innocence and the burden of proof; he called their attention to the necessity of determining whether the complaining witnesses had the opportunity to fix in their minds the personality and appearance of their assailants so that they could not be mistaken when subsequently confronted with the defendants. But he followed this entirely proper and vital instruction by submitting to them the question whether the description given by the complaining witness to the police was such a description that it " was a sufficient corroboration of the fact that he had seen these men." He said: " While they were in the City Court, you had related to you very particularly what happened in that court relative to the identification, because you can see how important is that one feature right there; was the identification of these defendants complete when it was made by Mr. Betros, the complaining witness, and his brother, *because the case turns practically wholly upon that proposition* [italics mine]. Was he, because of having seen them, as he states, at his store on the twenty-second of April, able to identify them to your satisfaction in the City Court or was his identification such in the City Court that it arouses your suspicion as to his ability to make it correctly. By that I mean this: These men were brought into court, first by the Troopers and next by the police authorities of Poughkeepsie and as they were brought into court, were the circumstances under which they were brought into court, such as to impress upon his mind that they were the people he was to pick out and was it a clean cut identification of them by Betros and his brother. If he, at that time, identified

these men, these two defendants as the men who were in his store and who took his money and who held him up with a revolver, then that's the end of the case, because if that identification is complete, then you have the chain of events which would enable you, upon the evidence, to find these defendants guilty, but challenging that, they say we were not in your store."

It is impossible to read this charge, otherwise not subject to criticism, without being impressed with the fact that the subsequent identification of these two defendants by the two witnesses was stressed so as to make it, as the judge said, the turning point of the case. It is provided that after hearing the appeal the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties. (Code Crim. Proc. § 542.) In the case at bar the attention of the learned county judge was not called to the incompetency of the evidence by proper objection on behalf of the defendants and no exception was taken to its admission. But we are not relieved from the necessity of considering the argument of the appellants now presented to us by the absence of objection or exception. (*People* v. *Kathan,* 136 App. Div. 303, 311.) We express no opinion as to the guilt or innocence of the defendants. They called witnesses in support of their alibi and also character witnesses. The jury found them guilty as charged in the indictment. There is nothing to show that either of the defendants has ever been previously convicted of crime. On their statements made prior to sentence (omitted from the printed record but which have been submitted to the court) each of the defendants makes oath that he has never been previously convicted of crime. We cannot say how far this incompetent evidence influenced the jury in reaching their verdict of guilty, resulting in the sentence of the defendants to imprisonment for at least six years in the State prison. It was no casual incident in the trial; it was spread out before the jury, accentuated in the cross-examination, and referred to by the learned judge in the charge. As was said in the *Jung Hing Case* (*supra*), it was " strongly calculated to influence a jury of laymen not versed in the rules of evidence."

The judgment of conviction of the County Court of Dutchess county should be reversed upon the law, and a new trial ordered. The judgment being reversed, we do not pass upon the separate appeals from the order denying a motion for a new trial upon the ground of newly-discovered evidence, and from the order denying a motion for a new trial because of alleged errors committed during the trial.

RICH, JAYCOX, MANNING and YOUNG, JJ., concur.

Judgment of conviction of the County Court of Dutchess county reversed upon the law, and a new trial ordered. The judgment being reversed, we do not pass upon the separate appeals from the order denying motion for new trial upon the ground of newly-discovered evidence, and from the order denying motion for new trial because of alleged errors committed during the trial.