THE PEOPLE OF THE STATE OF NEW YORK, Respondent *v.* CHARLES T. ATKINS and LEE M. BARLOW, Appellants.

First Department, March 17, 1959.

*Abraham J. Gellinoff* of counsel (*Frank Brenner* with him on the brief; *Gershman & Gellinoff*, attorneys), for Charles T. Atkins, appellant.

*Thomas Frawley* of counsel (*Jacob Rassner*, attorney), for Lee M. Barlow, appellant.

*Harold Roland Shapiro* of counsel (*Frank S. Hogan, District Attorney*, attorney), for respondent.

BOTEIN, P. J. The only question presented on this appeal is whether testimony, otherwise inadmissible, was properly received in evidence when offered by the People solely for the purpose of furnishing allegedly necessary background material to make the proof of the crimes with which defendants were charged intelligible to the jury. Without the challenged testi-

mony, there was abundant evidence to justify the jury in finding defendants guilty beyond a reasonable doubt.

Defendants were convicted after trial in the Court of General Sessions of violating section 380 of the Penal Law (bribing of labor representatives). The indictment charged them with selling to one Sullivan, for the sum of $100, a job which it was within their power to assign to him, but which under the union's prescribed hiring formula should have gone to another union member. This single transaction was charged as the substantive count under section 380, and also as the basis of a conspiracy count.

Defendant Atkins was president of Local 88, International Organization of Masters, Mates & Pilots, and defendant Barlow was its dispatcher. The local's rules provided that members could register with the local for off-shore jobs. They were given numbered registration cards and placed on a rotary hiring list in order of registration. When the dispatcher received a request to fill a vacancy, he would post a description of the job on the bulletin board in the hiring hall. After a particular job was posted, every member who desired it threw his card on the dispatcher's table and he was required to assign the job to the holder of the lowest number card.

Sullivan, the complainant, testified that he was a member of the International Union and as a qualified holder of a master's license, registered with Local 88 for an off-shore job as a deck officer. He visited the hiring hall several times but no jobs of that description were announced. He then had occasion to accompany a friend to a navigation school operated by a Captain Bowen. Upon learning that Sullivan had a license, Bowen asked him if he would like to get a job. When answered in the affirmative, Bowen told him he could get one if he put $100 in an envelope and kept his mouth shut. Sullivan rejected the proposal, at that time, but some time later reported the overture to the District Attorney.

Acting thereafter pursuant to instructions received in the District Attorney's office, Sullivan returned to Bowen's office, and informed him he was now receptive. Bowen instructed him to take his, Bowen's, business card, on which he underlined his name, to place $100 in an envelope, give the envelope and card to either of the defendants and said he would get a job. Bowen emphasized the importance of presenting the card.

There followed several visits to the local union office, in the course of which Sullivan testified he made arrangements with Atkins and Barlow, was told to wait until a job was available, and soon did receive from Barlow the first job that became

available. He thereupon turned over to Atkins an envelope containing bills furnished him for that purpose by the District Attorney. When the defendants were taken into custody each was in possession of $50 in bills with serial numbers corresponding to those on the bills contained in the envelope.

Most of the conversations Sullivan had with defendants and Captain Bowen were recorded by a Minifon recording device concealed on his person.

Defendants testified that information about the job given Sullivan was not posted on the bulletin board because he was regarded as a hardship case, for whom a departure was made from the usual procedure. Also, they testified the $100 had been pressed upon them as a sort of tip or gratuity, that the proffer of it did not influence them to give Sullivan the job, and that they had pocketed the money for subsequent disbursement to indigent seamen.

Sullivan testified to three conversations with Bowen — none in the presence of defendants — over strenuous objection that was made by defendants' counsel when the promise of producing such testimony was first adverted to by the prosecutor in his opening statement. These objections were repeated many times thereafter, but the testimony was admitted by the trial court " for the limited purpose of lending clarity or significance or color to the sequence of events."

The first conversation, which took place when Sullivan accompanied his friend to Bowen's school, was not recorded by mechanical device. He testified Bowen then told him he could get a job if he put $100 in an envelope and kept his mouth shut. Over a month later he reported this offer to the District Attorney, and then was instructed to telephone Bowen from the prosecutor's office. This conversation was recorded. Bowen was cautious about speaking on the telephone and told Sullivan to come to his office. Later that day Sullivan went to Bowen's school, and Bowen gave him explicit directions about giving the $100 to either defendant. This third conversation was recorded by the Minifon device, attached to Sullivan's person.

In *People* v. *Gleason* (285 App. Div. 278) this court had under consideration the admission of otherwise inadmissible background evidence on the theory that only against such a setting could the jury comprehend and knowledgeably resolve the issues presented by the indictment. In that connection we said (pp. 281–282): " It goes without saying that the introduction of such evidence must be carefully monitored by the trial judge, as it is an accommodation that the general rules of evidence must at times make to the exigencies of the particular instance. It is

difficult to enunciate rules in anything but the most general of terms. Too much depends on the cast of the particular case and the techniques employed by the particular judge in guiding and instructing the jury. Background material of this nature is received as an explanatory preamble to the evidence on which the guilt or innocence of the defendant will be determined. Every precaution must be taken lest it spill over its barriers and distort the jury's contemplation of the determinative and critical evidence." (Cf. *People* v. *Vaccaro,* 288 N. Y. 170; *People* v. *Rossi,* 270 App. Div. 624.)

Seldom can a court state with any confidence that evidence heard and seen by a jury is not prejudicial to a defendant. In this and similar cases we must try to strike a nice balance between the possible prejudice to the defendant, and the indispensability of the challenged evidence to the People's case. And, of course, any substantial doubt on either score should weight the scales in favor of the defendant.

We appreciate that a prosecutor is a lawyer; and the more conscientious the lawyer, the less inclined he is to take anything for granted in the trial of a case. Particularly, in prosecuting charges of this nature, is he disinclined to assume that a jury will be able competently to assess the issues presented under the indictment without the explanatory proof he has at his command. We note that both prosecutor and judge were praised by defense counsel at the close of the trial for their fairness. It therefore often remains for the judge, removed from adversary promptings and passions, to weigh the necessity against the mischief. Here there was no need to introduce the evidence of the Bowen conversations, and the prejudice potential was great.

In fact, through his conversations with defendants, Sullivan brought out clearly that he was proposing to pay for a job at the suggestion of Captain Bowen. He testified that on his first visit he told Atkins he had been to see Bowen, gave the latter's card to Atkins and displayed the envelope containing money to Atkins, which he did not take at that time. In the course of a subsequent visit the following exchange took place:

" Sullivan: Capt. Atkins, Bowen sent me down the other day. He told me to have a hundred dollars; I didn't have it with me the other day, but I got it today.

" Atkins: See Barlow when he comes in.

" Sullivan: Okay."

· Surely the jury did not need a recital of the Bowen prologue to understand fully what had brought Sullivan to the defendants and his reasons for visiting them.

The prejudice resulting from the reception of the Bowen conversations is evident. It bulwarked Sullivan's testimony with the mechanically recorded statements of a person not a defendant and not a witness subject to cross-examination. The statements may have been more damaging in one other respect, if we bear in mind that the indictment charges the giving and acceptance of one bribe. Bowen's statements, if believed, would indicate that defendants had been engaged for some time in the practice of repeatedly misusing their official prerogatives by selling jobs for monetary considerations. On summation the prosecutor belabored the inference of wholesale job selling by referring to the " formula " followed by defendants (cf. *People* v. *Kathan,* 136 App. Div. 303, 310). Also, defendants contended that Sullivan, who was associated with a rival union had attempted to " frame " them. The Bowen conversations would indicate that he, and not Sullivan, had initiated the transaction underlying the indictment.

It would appear, therefore, that the Bowen conversations may have prejudiced the jury improperly, and that they were not admissible " to give the jury an intelligent understanding of the whole of the evidence, and as bearing on the relations of the parties " (*Bedell* v. *United States,* 78 F. 2d 358, 364; see, also, *People* v. *Robinson,* 273 N. Y. 438, 445–446; *People* v. *Gleason,* 285 App. Div. 278, 282, *supra*; *Terry* v. *United States,* 51 F. 2d 49, 53). It was not contended and no effort whatsoever was made to prove that Bowen was a member of the alleged conspiracy.

The judgments of conviction should be reversed on the law only and a new trial ordered as to both defendants.

BREITEL, J. (concurring). I agree that the judgment of conviction should be reversed on the law only and a new trial ordered as to both defendants.

The conversations with Bowen were admissible on either of two theories. Unfortunately, as to neither theory, because of the position taken by the prosecutor, did the court give the jury the instructions by which the conversations could be properly weighed. If the jury found that the conversations by Sullivan with Bowen, recited in the majority opinion, were repeated to Atkins and that Atkins understood what they signified, and acquiesced in their purport, namely, to the effect that a bribe should be paid to Atkins, then they would have been adopted by the defendants, the one defendant acting on behalf of both if they were conspirators.

The conversations with Bowen also could have been received on the theory that Bowen was a conspirator with the two defend-

ants on trial, proven circumstantially. In that event, the jury would have had the burden, under proper instructions, of determining whether in fact Bowen was a conspirator, and whether his conversations with Sullivan were pursuant to the conspiracy and in furtherance thereof.

There is no rule of law of which I am aware that permits the admission of evidence that is not competent, relevant, and material, solely for the purpose of clarifying evidence against defendants in a criminal case. Thus, in *People* v. *Gleason* (285 App. Div. 278), and in the authorities cited in that case there was a connection (i.e., relevance) between the preliminary matter which was received in evidence and the elements of the crime that were to be proved. The connection was shown, or was attempted to be shown, by evidence that was otherwise admissible on grounds of competency, relevancy, and materiality.

M. M. FRANK, McNALLY and STEVENS, JJ., concur with BOTEIN, P. J.; BREITEL, J., concurs in opinion.

Judgments unanimously reversed upon the law only, and a new trial ordered as to both defendants. The court has considered the questions of fact and has determined that it would not grant a new trial on those questions.