(56 App. Div. 422.)

## PEOPLE v. SHERLOCK.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

1. LIBEL—TRIAL—JUSTIFICATION.

Under Pen. Code, § 244, declaring that a publication of libelous tendency is to be deemed malicious if no justification is shown, but is excused when made in the belief of its truth and upon reasonable grounds therefor, on trial of prosecution for libel defendant could not testify that when he published the libel he did it in good faith, believing the statements to be true; there being in evidence no facts upon which such a belief might have been founded.

2. SAME—QUESTION FOR JURY—LAW AND FACTS.

Where, on a prosecution for libel, the court in its charge stated to the jury several times that they were the sole judges of the law and the fact, and called their attention to the constitutional provision declaring that the jury on such a prosecution are the sole judges of the law and the fact, the fact that the court thereafter commented on the constitutional provision, and explained the law relating to libel, was not error, as taking from the jury the right to determine the law.

Appeal from court of general sessions, New York county.

William F. Sherlock was convicted of libel, and he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Benjamin Patterson, for appellant.
Franklin Bartlett, for the People.

McLAUGHLIN, J. On the 28th of September, 1899, the defendant was the editor of a newspaper called the "Unionist," in which on that day the following article was published:

"Here's a Pretty Mess.

"A Brief Statement of the Condition of Affairs in the Rat-Trap
Composing Room.

"It is now generally conceded that Clark is making more money than any of the stockholders. Is it possible that Clark is practicing the same tactics as when he was foreman of the Providence Journal, from which he was unceremoniously bounced, so it is reported, for making false entries on the pay roll, and pocketing the proceeds? Many merchants of Rhode Island cherish his memory very dear. If the Sun wants to get a true certificate of the character of its head rat, let them consult ex-Governor Brown and other well-known citizens of Rhode Island. The rates of wages paid in the Sun establishment range from $12 up to $27 per week. It may go a little higher on the books; but, if Mr. Clark is living up to his reputation, it is safe to say that he gets a good share of it."

For this publication the defendant was subsequently indicted, tried, and convicted of a libel, and sentenced to be imprisoned in the penitentiary for the term of three months. From this judgment he has appealed, and asks for a reversal upon the grounds: (1) That the trial court erred in not permitting the defendant to testify as to his

belief of the truth of the article published; and (2) in instructing the jury as to the law.

A libel is defined by the Penal Code (section 242) as follows:

"A malicious publication, by writing, printing, picture, effigy, sign or otherwise than by mere speech, which exposes any living person, or the memory of any person deceased, to hatred, contempt, ridicule or obloquy, or which causes, or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation, or association of persons, in his or their business or occupation, is a libel."

The following section (243) provides "that a person who publishes a libel is guilty of a misdemeanor," and the next section (244) provides that:

"A publication having the tendency or effect mentioned in section 242 is to be deemed malicious if no justification or excuse therefor is shown. The publication is justified when the matter charged as libelous is true, and was published with good motives and for justifiable ends. The publication is excused when it is honestly made in the belief of its truth, and upon reasonable grounds for this belief, and consists of fair comments upon the conduct of a person in respect of public affairs, or upon a thing which the proprietor thereof offers or explains to the public."

It was admitted upon the trial that the article was published in a newspaper called the "Unionist," and that the defendant at that time was in charge of such newspaper; he himself saying:

"I have admitted here that I was the editor of the Unionist on the 28th day of September, 1899. I was so regarded. I was regarded as the editor. * * * The article in question passed through my hands. I saw it. Q. But do you assume the responsibility for this alleged libel? A. Yes, sir."

The defendant was then permitted to testify fully as to his motives in publishing the article, and, among other things, he stated:

"Well, my motives were as a union man, as a believer in trades unions, as a man who has been always a trades union man ever since he became a journeyman, almost,—I wanted to show the public,—I wanted to show Col. Bartlett and his fellow stockholders the caliber of the man that they had as the foreman of the New York Sun. * * * Well, my motives were, of course, as I said, to show the caliber of this man. I had heard, in an indirect way, of him for over ten years. * * * My motive was to show the caliber of the complainant, Mr. Clark, and not only to the Sun people, but to other employers of union men throughout the city. That is about all that I can say in reference to motive."

He was then asked the following question: "Q. Now, Mr. Sherlock, when you published this alleged libel, did you in good faith and honesty believe the statements therein contained to be true?" An objection was made by the counsel for the people, which was sustained, and the defendant was not permitted to answer. The defendant insists that the court erred in making this ruling, and this is the first ground alleged as calling for a reversal of the judgment.

We are of the opinion that the ruling was right. Section 244 of the Penal Code, above referred to, it will be noticed, provides that a publication is excused "when it is honestly made in the belief of its truth, and upon reasonable grounds for this belief." It is not justified unless the person making the publication has "reasonable grounds" for believing that the statements made are true. Therefore, before a party can be permitted to testify as to his belief, the facts upon

which that belief is based must be given, so that the jury may deter-
mine not only whether the publication was honestly made, but wheth-
er the person had "reasonable grounds" for the belief.   One cannot
testify as to his belief as to the truth of an article published until he
has first stated the facts and circumstances upon which the belief
is predicated.   If we are right in this conclusion, then it necessarily
follows that the ruling was correct, because not a single fact or cir-
cumstance was given by the defendant establishing, or tending to
establish, the truth of the statements contained in the publication.
On the contrary, it seems to have been conceded that Clark never had
been employed by, nor had any connection whatever with, the Provi-
dence Journal, that he was not "unceremoniously bounced," that he
never made "false entries on the pay roll," and that he never "pocket-
ed the proceeds."  ·  The defendant having utterly failed to give any
testimony justifying his belief, the court properly held that he could
not testify as to his belief.   Powers v. Skinner, 1 Wend. 451; Hotch-
kiss v. Oliphant, 2 Hill, 510; Rice v. Withers, 9 Wend. 139.   The pub-
lication of a libel is a wrong, and the person against whom the article
is directed is presumed to have sustained damage, irrespective of the
intent of the publisher (Holmes v. Jones, 147 N. Y. 59, 41 N. E. 409);
and, when the person responsible for the publication is sought to be
punished in a criminal proceeding, he cannot excuse himself by testi-
fying that he believed the article was true, until he has given facts
and circumstances from which a legal inference can be drawn that
there was at least some ground for the belief.

   This brings us to a consideration of the other ground of error al-
leged, viz. that the court erred in instructing the jury as to the law
of the case.   After a careful consideration of the charge as made, we
do not think it is subject to the criticism made upon it by the appel-
lant's counsel; and it is to be observed that the defendant's counsel
at the trial was so impressed, because we do not find that any excep-
tion was then taken to the charge, or any requests made on behalf of
the defendant, in which the court did not acquiesce.   What is com-
plained of is that the trial court, in effect, took from the jury "the
right to determine the law."   But the most casual consideration of
the charge as a whole will show that the court not only did not do
this, but, on the contrary, stated to the jury that they were the sole
judges of "the law and the fact."   This statement was made to the
jury no less than five times during the course of the charge, and near
the close of the charge the court said:   "You are the sole judges of
the law and the facts.   You may decide this case as your consciences
and your judgments dictate, and I believe you will do so,"—while at
the beginning of the charge substantially the same thing was stated.
The court, in calling the jury's attention to the constitutional pro-
vision to the effect that it was the sole judge of the law and the fact,
said, "By the organic law of this state, namely, the constitution, which
is the highest law of this state, it is provided that the jury are to be
the sole judges of both the law and the fact."   And the jury could
not have misunderstood the instructions thus given simply because
the learned trial judge thereafter commented on this provision of the
constitution, or explained to them the law relating to libel.   A judge,

where a person is on trial for the crime of libel, not only has the right, but it is his duty, to tell the jury what the law is, in order that they may properly discharge their duty; and, so long as he does not interfere with their functions by arrogating to himself the right and power which belong to them,—that is, to determine both the law and the fact,—no error is committed. Our conclusion, therefore, is that the defendant had a fair trial. The jury were properly instructed by the judge presiding at the trial, and they found, upon evidence sufficient to sustain the finding, that the defendant was guilty of the charge set out in the indictment, and it follows that the judgment must be affirmed. All concur.